Belknap
No. 88-301

QUALITY DISCOUNT MARKET CORP.

v.

LACONIA PLANNING BOARD, CITY OF LACONIA,
HARRIS WAYSIDE FURNITURE CO., INC. & H. RUSSELL HARRIS

March 9, 1990

*Law Offices of David J. KillKelley P.C.*, of Laconia (*David J. KillKelley* on the brief and orally), for the plaintiff.

*Law Offices of Decker, Fitzgerald & Sessler*, of Laconia (*James N. Sessler* on the brief), by brief for the City of Laconia.

*James L. Burke*, of Gilford, by brief and orally, for Harris Wayside Furniture Co., Inc. and H. Russell Harris.

THAYER, J. Quality Discount Market Corp. (Quality Discount or the plaintiff) and Harris Wayside Furniture Company, Inc. (Harris Furniture or the defendant) both appeal a decree of the Superior Court (*Dunn*, J.) ruling that a 1958 "indenture" between the parties' predecessors-in-title created an appurtenant easement, giving Harris Furniture the right to use four parking spaces, upon the plaintiff's land. Quality Discount argues that Harris Furniture has no property right to have its customers park on Quality Discount's lot, and Harris Furniture contends that its easement encompasses the right to use more than four parking spaces. For the reasons that follow, we reverse the trial court's ruling and hold that Harris Furniture has no right to have its customers park in any of the spaces located on the plaintiff's premises.

The record indicates that Quality Discount and Harris Furniture own adjacent parcels of land on Union Avenue, in Laconia, with Harris Furniture owning the property to the north of Quality Discount. On April 9, 1958, Champagne's Super Market, Inc. (Champagne's), which is the plaintiff's predecessor-in-title, and Earle and Doris Phelps, who are the defendant's predecessors-in-title, entered into an indenture under which a pre-existing right of way was moved north and a property line was moved south. The indenture provides that any future purchasers of Champagne's property be acceptable to the Phelpses; otherwise, the right of way would "cease." Embedded in the paragraph describing this condition and limitations on the use of the right of way is the sentence which has given rise to the present dispute: "The first party [Champagne's] agrees to permit the use by customers of Wayside Furniture of parking facilities provided on the premises of the first party for its customers." "Wayside Furniture" is a reference to the furniture store called Tower Wayside Furniture operated by the Phelpses.

There is evidence that from 1958 to 1972, the customers of Tower Wayside Furniture used anywhere from zero to four of the parking spaces located on the property owned by Champagne's on any given day. In 1972, the Harrises purchased the Phelpses' property and business and formed the Harris Wayside Furniture Company, Inc. From 1972 to 1982, the defendant's customers used roughly the same number of spaces as the Phelpses' customers had used. Then, in 1982, the defendant expanded its business and built an addition onto its property. Around this time, the defendant's use of the plaintiff's lot increased to the point where its customers would sometimes park in over ten of the plaintiff's spaces. There is evidence that when the defendant has special promotions, up to twenty of its customers' cars will be parked in Quality Discount's lot. During the defendant's Grand House Opening in 1987, its customers "occupied the complete front parking lot" belonging to Quality Discount.

The plaintiff purchased Champagne's property in 1974 and continued the business of operating a grocery store. Quality Discount did not complain about the use by Harris Furniture of its parking facilities until around 1982, when the plaintiff noticed that in addition to Harris Furniture's customers, the defendant's employees, sales people, and delivery people were making liberal use of their parking lot. Until 1986, the defendant's employees continued using the Quality Discount lot to park their cars, and there is evidence that trucks delivering furniture to Harris Furniture continued to park on the plaintiff's property until the time of trial.

On July 17, 1987, Harris Furniture submitted to the Laconia Planning Board (the planning board) a plan to enlarge its warehousing and display area and to provide additional parking spaces on its property. The planning director determined that Harris Furniture would have to provide forty-one spaces to comply with the Laconia Zoning Ordinance. The defendant represented to the city planner that it had the right, pursuant to the 1958 indenture, to use an unlimited number of parking spaces on Quality Discount's lot. Therefore, based on the defendant's proposal to provide twenty-four spaces on its own property, coupled with Harris Furniture's representation to the board of its right to use an unlimited number of spaces on Quality Discount's lot, the planning board approved the defendant's site plan on August 3, 1987. By petition dated September 2, 1987, Quality Discount asked the superior court for certiorari review pursuant to RSA 677:15. The City of Laconia answered on November 3, 1987, and on the same date moved for the joinder of Harris Wayside Furniture Company, Inc. as a third party. The plaintiff's September 2 petition

alleged only that the planning board's approval of Harris Furniture's site plan was unlawful and unreasonable. On December 21, 1987, however, the plaintiff amended its petition to add Harris Furniture as a party defendant and to request a declaratory judgment concerning Harris Furniture's right to park on Quality Discount's property. *See* RSA 491:22.

Quality Discount alleged in its amended petition that the intent of the parties to the 1958 indenture was limited to Champagne's granting a personal license to the Phelpses to use Champagne's parking facilities. According to the plaintiff, this license expired when Tower Wayside Furniture went out of business and the Phelpses sold their property to the Harrises. By way of answer dated January 6, 1988, Harris Furniture claimed that all rights established in the 1958 indenture are permanent, including the right to use the plaintiff's parking facilities.

After a trial on the merits, the trial court entered a decree dated June 1, 1988, in which it ruled that "the 1958 'indenture' created an appurtenant easement in favor of the then Phelps' parcel," and that the "range of the easement is limited to four (4) spaces located in the ten space 'strip' abutting the Harris property." Turning to the planning board's approval of the defendant's site plan, the court found that if Harris Furniture had had the right to use seventeen spaces in the plaintiff's lot, the planning board's approval would have been lawful as far as the parking issue was concerned. However, based on its ruling that the defendant was entitled to a parking easement consisting of only four spaces, the trial court vacated the planning board's approval of Harris Furniture's site plan.

The issues raised by the parties on appeal include whether or not the trial court erred in finding that Harris Furniture possesses an appurtenant easement which is limited to four spaces, and whether the trial court erred in finding that the Laconia Planning Board's actions would have been lawful if the defendant had had the right to use seventeen spaces on the plaintiff's parking lot. The first issue we will address is the extent of Harris Furniture's rights, if any, to park in Quality Discount's lot. While the defendant claims it possesses an appurtenant easement, the plaintiff alleges that Harris Furniture has no right at all to park on its premises. If the defendant possesses an easement, its interest derives from a grant given in the 1958 indenture. Therefore, we must interpret the indenture to determine what parking rights, if any, Champagne's transferred to the Phelpses in 1958.

After identifying the parties to the agreement, the indenture contains a clause describing its purpose:

"WHEREAS it is the desire of both the first party [Champagne's] and the second parties [Earle and Doris Phelps] to move a right of way now existing across the premises of the first party a distance of four (4) feet northerly, and to convey the fee across which said right of way runs to the second parties, subject to a right of way in the first party in common with the second parties."

The indenture then describes in separate, enumerated paragraphs the boundaries of the strip of land conveyed in fee from Champagne's to the Phelpses, and the boundaries of the newly established right of way running to Champagne's across the Phelpses' property. In discussing the conveyance of the fee and right of way, the parties used words evidencing their desire to grant permanent rights in the property transferred. For example, in the paragraph regarding the right of way, the Phelpses agreed to "remise, release and forever quitclaim to the first party [Champagne's], its successors and assigns a right of way to pass and repass in common with the second parties" over an area twelve feet wide by two hundred feet long. Then, in the paragraph concerning the fee, Champagne's agreed to "remise, release and forever quitclaim to the second parties [the Phelpses] as joint tenants with right of survivorship, all its right, title and interest" to an area eight feet wide by two hundred feet long.

While Champagne's conveyance of land in fee to the Phelpses resulted in the exclusive ownership by the Phelpses of that property, the grant by the Phelpses to Champagne's was of a right of way to be used by them in common with Champagne's. There is no evidence other than the indenture itself of the parties' intentions in creating this indenture and transferring the interests that they did. However, it appears that the parties were careful to ensure that all future owners of Champagne's property, who would be using the right of way in common with the Phelpses or future owners of the Phelpses' property, would be acceptable to and get along with the owner of the Phelpses' property. After describing the boundaries of the new right of way, the indenture provides: "This right of way is conveyed subject to the condition that in case of sale by the first party [Champagne's] of its present premises on Union Avenue abutting said right of way, the purchaser shall be acceptable to the second parties [the Phelpses], otherwise said right of way shall cease... ." There is no similar provision in the indenture concerning the conveyance of the fee.

The sentence granting the Phelpses' permission to have their customers use Champagne's parking lot is embedded in the paragraph describing the parties' rights to use the right of way. This sentence merely provides: "The first party [Champagne's] agrees to permit the use by customers of Wayside Furniture [the Phelpses] of parking facilities provided on the property of the first party for its customers." Following this sentence is more discussion of the parties' responsibilities concerning the right of way. There is no allusion in the entire indenture to the Phelpses' right to use Champagne's parking lot other than the sentence quoted above. Although it is not expressly stated in the document, it is reasonable to assume that, similar to the right of way, the parties to the indenture intended that both Champagne's and the Phelpses' customers would share in the use of Champagne's parking facilities. However, unlike the parties' agreement to insert a provision terminating the right of way if a future purchaser of Champagne's property proved unacceptable to the Phelpses, there is no similar provision terminating the use of Champagne's parking lot by the owner of the Phelpses' property if a purchaser of the Phelpses' property were unacceptable to Champagne's. Carried to its logical conclusion, this means that since Champagne's had no legal right to object to who might purchase the Phelpses' property, if we were to find that Champagne's had granted the Phelpses a parking easement, Champagne's would have been forced to share the use of its parking lot with whoever the new owner might have been.

 Whether Champagne's granted the Phelpses an appurtenant easement or a mere license to use its parking facilities is a question of law reviewable by this court. *Burcky v. Knowles*, 120 N.H. 244, 251, 413 A.2d 585, 589 (1980); *Barton's Motel, Inc. v. Saymore Trophy Co., Inc.*, 113 N.H. 333, 335, 306 A.2d 774, 775 (1973). "An appurtenant easement is a nonpossessory right to the use of another's land. It is an incorporeal right generally created for the purpose of benefiting the owner of the dominant estate ... *as the possessor* of such estate; it runs with the land, is incapable of existence separate and apart from the dominant tenement, and is inheritable." *Burcky v. Knowles*, 120 N.H. at 247, 413 A.2d at 587 (citing 2 THOMPSON, REAL PROPERTY § 380, at 518–19 (1961)) (emphasis in original). A license, on the other hand, is defined as "a transient or impermanent interest which does not constitute an 'interest in land.' It may be created orally and is merely a revocable personal privilege to perform an act on another individual's property." *Waterville Estates Assoc. v. Town of Campton*, 122 N.H. 506, 509, 446 A.2d 1167, 1169 (1982) (citations omitted). The intent

of the parties to an instrument determines whether or not an easement or a license was granted. *Locke Lake Colony Assoc. v. Town of Barnstead*, 126 N.H. 136, 139, 489 A.2d 120, 122 (1985). If the language of the document is ambiguous, a court may consider extrinsic evidence and the circumstances surrounding the conveyance to arrive at the parties' intent. *Id.; Ouellette v. Butler*, 125 N.H. 184, 187–88, 480 A.2d 76, 79 (1984). The law in New Hampshire is that "our determination of the terms of a[n] [instrument] is based on the parties' intentions as properly found by the trial court." *Robbins v. Lake Ossipee Village, Inc.*, 118 N.H. 534, 536, 389 A.2d 940, 941 (1978). However, we will not uphold the trial court if its ruling is not supported by the evidence or is erroneous as a matter of law. *Nadeau v. Town of Durham*, 129 N.H. 663, 666, 531 A.2d 335, 337 (1987).

The trial court initially found:

> "The nature of the interest exchanged regarding the parking rights is unclear from the face of the document. There was no limitation on the number of spaces to be used, nor was there any explication of what frequency of use was intended. These factors, standing in isolation, lead to the inference that the grant was personal to the Phelps, in tandem with their business, and that nothing more was intended."

However, after considering the circumstances surrounding the indenture, the court ruled that the parties' intent was to create an appurtenant easement. The factors the court examined to arrive at this conclusion included the fact that the grant was to "Wayside Furniture" and not to the "Phelps." The court also looked at the interests that were exchanged, finding that the Phelpses gave up a four-foot strip of their land to move the right of way in exchange for nothing less than an appurtenant parking easement running with their land. Additionally, the court considered the value of the parking spaces to the Phelpses and future owners of the furniture business, reasoning that since the business would be sold one day, the value of the Phelpses' property would have been minimal without the requisite parking facilities.

We hold that based on the parties' intentions as expressed in the indenture, the trial court erred as a matter of law in ruling that Champagne's conveyed an appurtenant parking easement by the 1958 indenture. To begin with, no evidence other than the indenture itself was presented concerning Champagne's and the Phelpses' intentions in creating the indenture. In light of this, the trial court committed error in finding that the Phelpses gave up a four-foot

strip of land for a right of way in exchange for an appurtenant parking easement. Indeed, the court apparently overlooked the fact that Champagne's granted the Phelpses an eight-foot strip of land in fee, and also that the parties' stated purpose for the indenture, inserted at the beginning of the document, was to move a pre-existing right of way north and to move the property line south. Moreover, no evidence was presented regarding any plans by the Phelpses to sell their business, or the value to the Phelpses of the parking spaces on Champagne's property. Hence, the trial court erroneously speculated about the value of the Phelpses' property without the use of Champagne's parking facilities in concluding that an appurtenant easement was transferred in 1958. Finally, the fact that the grant was to "Wayside Furniture" and not to the "Phelpses" is not dispositive of whether or not a permanent or a temporary right was transferred.

Based on the parties' choice of words in the indenture and the parties' stated purpose, we hold that Champagne's granted the Phelpses a personal license to use its parking facilities, and nothing further, which expired when the Phelpses sold their property and business to the defendant. When the parties were describing the right of way and fee that were conveyed, they used words indicating a permanent transfer of rights. In the paragraph regarding the fee and the paragraph concerning the right of way, the parties used the words "remise, release and forever quitclaim." In contrast, the parties merely used the words "agrees to permit" in the sentence relating to the parking. The parties to the 1958 indenture clearly were familiar with words used to convey a permanent interest in realty, yet they chose words used to convey a temporary interest when discussing the Phelpses' right to park in Champagne's lot.

Also, the parties were very specific in the paragraphs concerning the right of way and fee, setting forth in detail the boundaries and number of feet conveyed. However, in the sentence devoted to parking, the parties failed to specify either the number or location of the particular spaces the Phelpses were permitted to use. The parties' specificity when addressing the fee and right of way, compared with their vagueness when describing the parking rights, suggests that something less than a permanent interest in Champagne's parking lot was granted to the Phelpses.

In addition to the words used in the indenture, the parties' stated purpose unambiguously indicates that the parties intended to move a right of way north and a property line south. Nowhere

in the indenture do the parties indicate that a purpose of the instrument was to transfer a parking easement. Moreover, the fact that the right of way would cease if a future purchaser of Champagne's property proved unacceptable to the Phelpses, whereas Champagne's was given no similar veto power regarding the parking rights of future purchasers of the Phelpses' property, indicates that the parking interest granted to the Phelpses was a personal license and not an appurtenant easement. For all of these reasons, we reverse the trial court's ruling that the 1958 indenture created an appurtenant easement which ran with the land, and hold that the indenture created a license which expired when the defendant purchased the Phelpses' property in 1972.

Based on our holding above that Harris Furniture has no right to any parking spaces on Quality Discount's property, we need not address Quality Discount's argument that the trial court erred in finding that the Laconia Planning Board's actions would be lawful if Harris Furniture had the right to use seventeen spaces in the plaintiff's lot.

*Reversed.*

BATCHELDER, J., did not sit; the others concurred.