Carroll
No. 89-531

## DONALD MCMULLIN

v.

## LEON DOWNING

June 25, 1992

*Schroeder, McLetchie & Clough,* of Ossipee (*Erland C. L. McLetchie* on the brief and orally), for the plaintiff.

*Anthony G. Demetracopoulos* and *Elizabeth Cazden,* of Manchester (*Mr. Demetracopoulos* and *Ms. Cazden* on the brief, and *Mr. Demetracopoulos* orally), for the defendant.

*John P. Arnold*, attorney general (*Terry L. Robertson*, senior assistant attorney general, on the brief and orally), for the State as *amicus curiae*.

HORTON, J.    The plaintiff, Donald McMullin, appeals from a partial verdict in favor of the defendant, Leon Downing. The Superior Court (*Dickson*, J.) issued the partial verdict on the defendant's counterclaim for breach of contract. The plaintiff asserts the following error: (1) failure to reduce the counterclaim by the $1,750 still owed the plaintiff on the contract; (2) awarding damages for repairs to items not contained in the contract; (3) failing to qualify the plaintiff as an expert in earth excavation; (4) denying the plaintiff's motion to be exempt from the consumer protection statute, RSA chapter 358-A, by virtue of being in a regulated industry; and (5) appointing an expert to assess what repairs and costs would be necessary to upgrade the septic system, and reserving jurisdiction to impose additional damages. For the reasons stated herein, we reverse and remand for a new trial.

The plaintiff contracted with the defendant to perform excavation work on the defendant's septic system, install a driveway, and widen the front road. The contract price, as amended, called for $20,000 to be paid in installments. At the close of the project, the plaintiff initiated suit to recover an unpaid installment of $1,750. The defendant counterclaimed, asserting that the plaintiff had not completed, or had completed in a sub-standard manner, the work specified by the contract. He also sought damages pursuant to RSA chapter 358-A, the consumer protection statute.

After trial, the court found that the defendant still owed $1,750 on the contract, but ruled against the plaintiff's claim for the balance owed on the contract. On the counterclaim, it ruled for the defendant in the amount of $28,095.36 and reserved an additional $8,000 for future repairs to the septic system. It reached these figures by taking the defendant's expert's $29,400 repair estimate, subtracting $8,000 for the septic repairs to be determined later, adding $6,167.50 in legal fees and costs, and adding $527.86 for living expenses.

■ ■    The court's failure to account for the $1,750 still owed on the contract was error. The measure of contract damages is "the difference between the cost of finishing the work and the balance due the plaintiff on the contract." *Marcou Constr. Co. v. Tinkham Indus. & Dev. Corp.*, 117 N.H. 297, 299, 371 A.2d 1187, 1188 (1977). In this case, the court awarded damages in an amount necessary to com-

plete the contract, but failed to deduct any balance due on the contract. The court did find that, subject to the defendant's counterclaim, the plaintiff was owed $1,750, but concluded that the defendant's counterclaim was not to be offset by the $1,750. The court failed to account for the balance due on the contract.

The plaintiff next argues that the court, in calculating damages, considered many items not called for in the contract. It would appear that most of the cost items properly could be found within the rather sparse specifications of the contract or by implication from the description of the work to be performed, but there is conflict between a finding of the trial court and the estimate relied upon for the award. The award included costs for widening Chamberlain Road. The court granted the plaintiff's requested finding "that as to the widening of Chamberlain Road . . . [the contract] *does not* require the plaintiff to install culverts, swale or any fill material." (Emphasis supplied.) Yet, the estimate upon which the court based its damage award provided repairs to "[i]nstall rip rap *swale*, remove rocks in road bed, and install crush to finish road bed." (Emphasis supplied.)

We are unpersuaded by the plaintiff's other claims concerning the award of damages. The plaintiff makes much of the fact that the first damage estimate prepared by the defendant's expert, Mr. Williams, was less extensive than the second estimate, prepared a year later. The plaintiff then seizes upon certain testimony which he claims establishes that the work to be performed under the contract was more limited than that called for in the second estimate.

"Our determination of the terms of an instrument is based on the parties' intentions as properly found by the trial court." *Quality Discount Market Corp. v. Laconia Planning Bd.*, 132 N.H. 734, 740, 571 A.2d 271, 274–75 (1990) (quotation and brackets omitted). Because the contract was based upon a sparsely-worded estimate, and required interpretation through parol evidence, the judge had broad latitude to determine the parties' intent. *See id.* While there was conflicting testimony, the testimony of the defendant and Williams supports the court's finding. Williams' testimony, in particular, demonstrated what attendant work would be required to fulfill the terms of the contract. That the initial estimate submitted by Williams was for $13,300, not including Chamberlain Road, while the second estimate was for $29,400, was a factor for the trier of fact to consider in determining whether the second damage assessment was reasonable. We cannot say, however, that the court's use of the second estimate was unreasonable, because the evidence supports the court's finding as to the intended terms of the contract.

The plaintiff next argues that the trial court committed error by failing to qualify the plaintiff as an expert witness. Specifically, he contends that the court made its ruling without first allowing him to establish his expert credentials.

■ Generally, a trial court has great discretion in determining whether to permit a witness to offer expert opinion. *See State v. Place*, 128 N.H. 75, 78, 513 A.2d 321, 323 (1986). In order to make this determination, the court must decide "whether or not the witness, by either study or experience, has knowledge on the subject-matter of his testimony so superior to that of [people] in general concerning it that [the witness's] views will probably assist the trier of fact." *Downing v. L.H. Shattuck, Inc.*, 91 N.H. 234, 236, 17 A.2d 529, 532 (1941) (citation omitted).

In this case, the plaintiff cannot show that the court abused its discretion. The plaintiff objects to the fact that the court permitted him to testify about industry practice and standards, but did not admit testimony as to his credentials. Other than to establish the foundation of his opinion, information concerning the plaintiff's credentials was irrelevant. The plaintiff had already testified in his case in chief, and the court was familiar with much of his background pertinent to the case by the time he attempted to offer his opinions.

■ More important, however, even assuming that the plaintiff's qualification testimony was curtailed, we have no way of knowing what the plaintiff's testimony would have been, as no offer of proof was made. Absent this proffer, we cannot weigh the prejudice suffered, nor can we know whether this evidence might have altered the ruling. *See* N.H. R. Ev. 103(b) (error must be prejudicial to require reversal).

We also agree with the trial court's ruling that the plaintiff was not exempt from the consumer protection statute. The trial court awarded the defendant $6,167.50 in legal fees and costs on the basis of the plaintiff's violation of the Consumer Protection Act, RSA chapter 358-A. The plaintiff asserts that, at least to the extent that he installed the septic system, he was exempt from the act's coverage by being in a "[t]rade or commerce otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of this state. . . ." RSA 358-A:3, I. He argues that the State's regulation of septic systems, *see* former RSA chapter 149-E (now codified at RSA chapter 485-A), qualifies for this exemption. We affirm the court's rejection of the plaintiff's claim for exemption.

■ The defendant argues that the plaintiff, by first raising the issue in a post-trial motion, has not sought the exemption in a timely manner. Whether RSA 358-A:3, I's exemption applies is a question of law for the trial court based on the facts developed at trial. The consumer has the initial burden of establishing the violation, including that the violating practice was in trade or commerce. Once the violation is established, the burden shifts to the business to establish that the transaction was exempt. RSA 358-A:3, V. The trial court then decides, as a matter of law, whether the exemption applies. *See Rousseau v. Eshleman,* 128 N.H. 564, 567–68, 519 A.2d 243, 245 (1986); *Gilmore v. Bradgate Associates,* 135 N.H. 234, 239, 604 A.2d 555, 557 (1992). Determining if the actions alleged by the consumer are "otherwise permitted" under laws or regulations will not implicate any facts that need to be rebutted. The forbidden actions have been proven by the consumer to invoke the relief promised by the statute, and adequate notice of the claim and opportunity to rebut the proof have been afforded. The court tests the proven actions against appropriate laws and regulations. Such a test is appropriately raised in a post-trial motion. The defendant has not shown that he was prejudiced by the fact that this issue was raised in this manner. We conclude that the issue was timely raised in this case. *See State v. Tselios,* 134 N.H. 405, 407, 593 A.2d 243, 245 (1991).

■ The trial court correctly denied the exemption. The violation found below, misrepresentation of a standard of service (RSA 358-A:2, VII) is not an action "permitted by any regulatory board or officer acting under statutory authority of New Hampshire or the United States." *Gilmore,* 135 N.H. at 238, 604 A.2d at 557.

The plaintiff finally argues that the court erred in appointing a third party expert to take "such steps as he, in his sole discretion, deems necessary and appropriate to determine what steps, repairs, replacements or the like will be necessary to achieve a properly installed septic system for the property." Although acknowledging that the trial court had authority to defer resolution of the septic system issue, *see Jamestown Mut. Ins. Co. v. Meehan,* 113 N.H. 639, 641, 312 A.2d 689, 691 (1973); R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1438 (Supp. 1992), and admitting agreement to the procedure, the plaintiff objects to the trial court empowering investigation by a court expert, and delegating its fact finding and decision making authority, all outside the adversary crucible.

■ The court erred in this course of resolution. The court essentially appointed its own expert, and deprived the parties of an opportunity to present evidence on this issue in a trial setting.

Federal Rule of Evidence 706 does permit a court to appoint its own expert. Our State, however, has not adopted the federal rule or any related rule in this area. *See* 3 J. WEINSTEIN AND M. BERGER, WEINSTEIN'S EVIDENCE ¶ 706 [04], at 706–34 (1991). Nor does New Hampshire law provide a general procedure for the appointment of an expert by the court. *See* N.H. R. Ev. 706 comment.

Thus, after deferring resolution of this matter, the court should have instructed the parties to put on more evidence to permit the court to fully resolve this issue. That this was necessary is borne out by an ambiguity in the court's order. The court granted the defendant's requested finding of fact that the septic system requires repair. However, the court's order implies that it remains to be determined whether the septic system needs to be repaired at all.

We are unable to correct on appeal the errors found in the trial court's decision and therefore reverse and remand that decision for a new trial.

*Reversed and remanded.*

BROCK, C.J., concurred in the result only; the others concurred.