Hillsborough-northern judicial district
No. 92-574

MILDRED DWIRE

v.

JOHN B. SULLIVAN, JR. AND JBS REALTY TRUST

April 21, 1994

*James M. Winston*, of Manchester, by brief and orally, for the plaintiff.

*Law Office of Paul J. Haley*, of Hillsboro (*Paul J. Haley* and *Scott L. Hood* on the brief, and *Mr. Haley* orally), for the defendants.

BATCHELDER, J.   The plaintiff, Mildred Dwire, sued the defendants, John B. Sullivan, Jr. and JBS Realty Trust (the trust), for money damages resulting from their breach of a contract to purchase real estate from her. The defendants appeal from a jury verdict after a trial in the Superior Court (*Coffey*, J.), arguing that the trial court erred in denying: (1) Sullivan's motions for summary judgment to dismiss himself, the trustee, as a defendant; (2) a pretrial motion to introduce evidence that the trust, not Sullivan, was the true defendant; (3) the defendants' motion *in limine* to prevent the admission of a real estate broker's opinion of the value of the real estate; and (4) their motion to dismiss because the plaintiff failed to prove ownership of the real estate. We affirm in part and remand.

In June 1988, the trust contracted to purchase for $29,000 per acre approximately 26.5 acres of land owned by the plaintiff on Daniel Webster Highway in Bedford. Under the contract terms, the trust was required to close the approximately $750,000 purchase thirty days after receiving subdivision approval from the Town of Bedford (the town). The town granted subdivision approval on July 17, 1989.

On August 15, 1989, the defendants notified the plaintiff that the conditions for subdivision imposed by the town were overly restrictive and financially burdensome and, therefore, that the trust could not close on the property.

The plaintiff filed suit against the defendants for breach of contract. Following a three-day trial, the jury returned a $450,000 verdict·for the plaintiff. The trial court denied Sullivan's motions to set aside the verdict and for a new trial, and this appeal followed.

The defendants first argue that the Superior Court (*Barry*, J.) erred in denying Sullivan's motions for summary judgment. Because the contract was between the plaintiff and the trust, Sullivan maintains that he is shielded from personal liability for its breach.

▮ In determining whether the motions for summary judgment were properly denied, we consider the affidavits, as well as all inferences properly drawn from them, in the light most favorable to the plaintiff. *Gamble v. University of New Hampshire*, 136 N.H. 9, 16, 610 A.2d 357, 362 (1992). If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the court must grant summary judgment. RSA 491:8-a, III (1983).

Sullivan's attempt to insulate himself from personal liability by creating a standard business trust fails because the trust, as drafted, is actually a nominee trust. *See generally* R. Birnbaum & J. Monahan, *The Nominee Trust in Massachusetts Real Estate Practice*, 60 MASS. L.Q. 364 (1976). The typical features of a nominee trust, all of which are present here, are:

> "(1) the names of the beneficiaries are filed with the trustees, rather than being publicly disclosed; (2) a trustee may serve simultaneously as a beneficiary; (3) the trustees lack power to deal with the trust property except as directed by the beneficiaries; (4) a third party may rely on the disposition of trust property pursuant to any instrument signed by the trustees, without having to inquire as to whether the terms of the trust have been complied with; and (5) the beneficiaries may terminate the trust at any time, thereby receiving legal title to the trust property as tenants in common in proportion to their beneficial interests."

*In re Grand Jury Subpoena*, 973 F.2d 45, 48 (1st Cir. 1992) (quotation omitted).

▮ The key to the nominee nature of a trust is that the beneficiaries are in practical control of the trust property. *Id.* "Unlike in a 'true trust,' the trustees of a nominee trust have no power, as such, to

act in respect of the trust property, but may only act at the direction of (in effect, as agents for) the beneficiaries." *Id.* (quotation omitted). Here the trust document explicitly declares, "This trust is (and the Trustee shall act only as) an agent of the beneficiaries . . . ."

The fact that a nominee trust's beneficiaries retain control over the trustees has led courts in other contexts to disregard the "trust" status. *See, e.g., Druker v. State Tax Comm'n*, 374 Mass. 198, 201, 372 N.E.2d 208, 211 (1978). As one court explained: "[I]t is not the nominee trust itself that engages in business; it is the principals who engage in business activities, using the device of a nominee trust and the assistance of their trustee/agent." *In re Village Green Realty Trust*, 113 B.R. 105, 114 (Bankr. D. Mass. 1990).

Evidence in the record suggests that Sullivan and his wife, Gladys, as trustees of a second trust, the John B. Sullivan, Jr. Revocable Trust, are the beneficiaries of the realty trust. On the record before us, however, we cannot determine whether trustee status in the revocable trust somehow insulates Sullivan from personal liability for the breach in question. Because Sullivan maintained both at trial and on appeal that the realty trust is a valid business trust, the declaration of trust for the revocable trust was not before the trial court and is not part of the record on appeal. Consequently, we remand to the trial court for its determination, in the first instance, of what effect, if any, the revocable trust has on Sullivan's personal liability for the breach in this case.

■ Sullivan also argues that the trial court erred in denying his pretrial motion to introduce evidence that the realty trust, and not Sullivan individually, was the party in interest. As discussed above, the realty trust does not shield Sullivan from personal liability. Consequently, the trial court did not err in denying Sullivan's motion.

Maintaining that a real estate broker is not qualified to offer expert testimony on the fair market value of property, the defendants next assert that the trial court erred in denying their motion *in limine* to exclude the testimony of Robert Brooks, president of a real estate brokerage company. We disagree.

■ The decision to permit a witness to offer expert testimony lies within the sound discretion of the trial court. *McMullin v. Downing*, 135 N.H. 675, 679, 609 A.2d 1226, 1229 (1992). If "the witness, by either study or experience, has knowledge on the subject-matter of his [or her] testimony so superior to that of people in general concerning it that the witness's views will probably assist the trier of fact," the admission is not error. *Id.* (quotation and brackets omitted); *see* N.H. R. Ev. 702.

Brooks testified that he had taken numerous courses in real estate marketing valuation in his twenty-seven-year career in the real estate industry in Bedford. As president of a real estate brokerage company, he was required to furnish his clients with property valuations. Thus, Brooks' knowledge of valuation is sufficiently superior to that of people in general that it probably assisted the jury. We find no abuse of discretion in the trial court's ruling. *See McMullin*, 135 N.H. at 679, 609 A.2d at 1229.

The defendants' final argument that the plaintiff failed to prove ownership of the property merits little discussion. As the trial court correctly noted, the underlying contract to purchase the land, which was admitted as a full exhibit, identified the plaintiff as the owner of the property. Further, the defendants' pretrial statement listed as an uncontested fact that the property was "owned by Plaintiff."

*Affirmed in part; remanded.*

All concurred.