Boone v. Spangler                    CV-94-602-SD  12/03/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Michael I. Boone, et al


     v.                              Civil No. 94-602-SD

Spangler Automated Medical
  Services, Inc.


O R D E R


     This order addresses the issues raised by certain post-trial
motions.


1.  Background

     In this action, Michael Boone, who was at relevant times a
practicing chiropractor, sought recovery of money damages from
Spangler Automated Medical Services, Inc. (SAMSI).  He claimed
such damages to have resulted from deficiencies in an automated
billing service he purchased from the defendant.  Plaintiff's
amended complaint sought recovery for negligence and breach of
contract, and violation of the Consumer Protection Act (CPA) of
New Hampshire.  New Hampshire Revised Statutes Annotated (RSA)
358-A:2.

     The trial evidence was to the effect that Boone, on

responding to a SAMSI ad in "Medical Economics", was referred by SAMSI to the New Hampshire-based American Physicians Services (APS). James Castner, the principal of APS, entered into an agreement with plaintiff to provide plaintiff's chiropractic practice with automated billing services.

Castner's business card indicated he was a regional manager for SAMSI. The principal of SAMSI, L. Jack Spangler, testified that this came about because of defendant's dual marketing approach. Thereunder, SAMSI (1) sold software to a customer who in turn could set up his own billing service and contract his own health care provider customers; and (2) allowed interested parties to sell software on commission in designated geographical regions to parties who in turn desired to set up such billing services. Defendant claimed that it was in connection only with the second of these marketing strategies that Castner had authority over a geographical region.

In any event, Boone claimed that his experience with the billing services provided by APS was unhappy, resulting in confusion, duplication of billing, and loss of patients.[1] An

---

[1]Boone testified to the failure of APS to make follow-up calls to patients who had not paid and to follow up with effort to collect from insurance companies. He further testified that his displeasure with Castner's services caused him to insist that Castner come in to and do his billing work at plaintiff's chiropractic office.

independent consulting firm retained by plaintiff provided testimony supportive of some of such complaints. Plaintiff also testified to several items of lost revenue which he contended were caused by the actions of APS.[2]

At the close of plaintiff's case-in-chief, defendant moved unsuccessfully for judgment as a matter of law pursuant to Rule 50(a), Fed. R. Civ. P.[3] Defendant then rested without calling any witnesses and renewed such motion, which was also denied.

Due to the multiplicity of plaintiff's claims, the court submitted special verdict questions with verdict forms to the jury. The form thereof was reviewed with and approved by counsel before the questions were submitted to the jury.

---

[2]Using bank receipt records, Boone testified to office revenue declines of $30,000 a month for approximately 12 months while APS provided billing services.

[3]Rule 50(a), Fed. R. Civ. P., provides:

> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

The case went to the jury on the early afternoon of October 21, 1996, but deliberations continued until the next day at the request of the jurors. On the late afternoon of October 22, 1996, the jury reported that it had been able to answer the special jury questions numbered 1 through 7, but had been unable to agree on the answer to question no. 8.

Following discussion with counsel, the court polled the jury to ascertain whether further deliberation might resolve all issues. Such polling indicated that progress could be made, and the jury was excused to return on October 23, 1996.

On the early afternoon of October 23, 1996, the jury returned with a purported verdict form which, although it contained answers to questions 1 through 7, did not contain the necessary verdicts in accordance with such answers. Accordingly, the court, following side-bar discussion with counsel, and over the objection of defendant,[4] directed the jury to return to continue its deliberations.

At approximately 3:55 p.m., the jury returned with verdicts of zero dollars on plaintiff's negligence claims, $5,000 on the breach of contract claim, and $25,000 on the violation of the New Hampshire CPA. At the defendant's request, the jury was

_____

[4]Defendant interposed further objections without success while the jury was continuing its deliberations.

4

individually polled and affirmed said verdicts.

## 2. Defendant's Motion for Judgment Pursuant to Rule 50(b), Motion for New Trial or, Alternatively, Motion for Remittitur (document 61)

Defendant renews, pursuant to the provisions of Rule 50(b), Fed. R. Civ. P.,[5] its motion as a matter of law. Defendant also moves for a new trial or, alternatively, seeks remittitur of the verdict returned for violations of the New Hampshire CPA. RSA 358-A. Plaintiff objects. Document 64.

The Rule 50(b) motion is grounded on defendant's claim that the evidentiary record is insufficient to permit the jury findings made on any of plaintiff's claims. It is elemental that

_____

[5]Rule 50(b), Fed. R. Civ. P., provides:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment--and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:
> (1) if a verdict was returned:
>     (A) allow the judgment to stand,
>     (B) order a new trial, or
>     (C) direct entry of judgment as a matter of law; . . . .

5

a judgment as a matter of law may be granted only on a "'determination that the evidence could lead a reasonable person to only one conclusion.'" Cigna Fire Underwriters v. MacDonald & Johnson, 86 F.3d 1260, 1263 (1st Cir. 1996) (quoting Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993)) (further citation and emphasis omitted).

Thus viewed, the evidence presented by plaintiff as to liability and damages was sufficient to permit the jury to resolve the issues presented in the manner in which it did. While defendant aggressively challenged plaintiff's evidence, the resolution of any evidentiary conflict was for the jury.

Defendant fares little better with its arguments that the evidence would not support a finding of a violation of RSA 358-A. As previously outlined, defendant adopted a dual approach to marketing, the distinctions of which were not made clear to possible consumers in the position of plaintiff. As misrepresentation of a standard of service falls within the statutory definitions of an "unfair or deceptive act or practice," RSA 358-A:2, VII; McMullin v. Downing, 135 N.H. 675, 680, 609 A.2d 1226, 1230 (1992), the evidence was sufficient for the jury to find a violation of RSA 358-A.

Nor was there anything improper in the requirement imposed by the court that the jury continue its deliberations. The issue

6

of comparative legal fault on which the jury found for defendant by its answers to special verdict questions 7 and 8 applied only to the plaintiff's negligence claims. The answers to special verdict questions 4, 5, and 6 required the jury to complete the form of verdict related to such questions. The jury's deliberations could not be considered complete until they did so.

Accordingly, the jury's final answers to the special verdict questions and the rendition of verdicts in accordance therewith was correct. The court properly exercised its discretion in refusing to accept the initial and incomplete verdicts. Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 10 (1st Cir. 1991).

Defendant also suggests that the $25,000 award for violation of RSA 358-A is excessive. But plaintiff's evidence, if believed in its entirety, could support a far larger award. Accordingly, defendant is not entitled to a remittitur of such verdict.

However, as RSA 358-A does not provide for an "independent recovery," and the same factual allegations were made in the CPA claim as in the other counts, the New Hampshire rule of nonduplication of damages applies. Labarre v. Shepard, 84 F.3d 496, 501-02 (1st Cir. 1996). Accordingly, plaintiff is not entitled to retain both the $5,000 award for breach of contract and the $25,000 award for violation of the CPA. The $5,000 verdict for breach of contract is herewith vacated, as to allow

7

it to stand would result in a duplicative award of damages.

Finally, defendant is not entitled to a new trial because such relief may be had only if the verdict is so clearly against the weight of the evidence to amount to a manifest miscarriage of justice.  Cigna Fire Underwriters, supra, 86 F.3d at 1263.  The record here would not support such a finding.


3.  Plaintiff's Motion for Attorney Fees (document 59)

As hereinabove indicated, plaintiff recovered a jury award of $25,000 for violation of RSA 358-A.  He now moves, in connection with that award, for an award of attorney fees in the amount of $25,432.50.  The defendant objects.  Document 62.[6]

RSA 358-A:10 provides in relevant part that "a prevailing plaintiff shall be awarded the costs of the suit and reasonable attorney's fees as determined by the court."  Where, as is here the case, an award of fees and costs rests on state law, that law also controls the method of calculating the award.  Start Fin. Servs., Inc. v. Aastar Mortgage Corp., 89 F.3d 5, 16 (1st Cir.

---

[6]Plaintiffs have also filed a motion for leave to reply to the defendant's objection.  Document 63.  That motion is granted, and the court has considered the legal authorities submitted by the plaintiffs in connection therewith.

Similarly, defendant has filed an "assented to" motion for leave to reply to plaintiffs' objection.  Document 65.  The court also grants that motion and has considered the legal authorities submitted in connection therewith.

1996); <u>Peckham v. Continental Casualty Ins. Co.</u>, 895 F.2d 830, 841 (1st Cir. 1990).

Under New Hampshire law, the task of determining the reasonableness of attorney fees is strictly a matter of judicial discretion. <u>Drop Anchor Realty Trust v. Hartford Fire Ins.</u>, 126 N.H. 674, 681, 496 A.2d 339, 344 (1985). RSA 358-A:10 does not prescribe a particular method for calculation of attorney fees, and the New Hampshire courts have not spoken to the question. However, courts in neighboring Massachusetts have considered the issue in resolving the attorney fees provision of the Massachusetts CPA, Mass. Gen. Laws (MGL) 93A:11.[7]

Under Massachusetts law, absent a contractual agreement fixing the amount of fees in either dollar amount or by formula, the amount is assessed on the basis of "fair and reasonable compensation for the services rendered." <u>First Nat'l Bank of Boston v. Brink</u>, 372 Mass. 257, 361 N.E.2d 406, 410 (1977). Relevant conditions include the amount of time expended, the complexity of the litigation, the amount of work reflected by the record, and the quality of the services rendered. <u>Northern Heel Corp. v. Compo Indus., Inc.</u>, 851 F.2d 456, 476 (1st Cir. 1988).

_____

[7]Without denigrating the scholarly decision of Judge Yacos upon which plaintiffs rely, the court finds the better rule to be that adopted by the Massachusetts courts in their construction of attorney fees under their version of the CPA.

The fee-setting court may also consider "the amount and importance of the matter involved, . . . the value of the property affected by the controversy, and the results secured." Id. at 477 (quoting McInerney v. Massasoit Greyhound Ass'n, 359 Mass. 339, 269 N.E.2d 211, 219 (1971)) (additional citations omitted).

In an attorney fees award under MGL 93A, the prevailing party's recovery is limited to additional fees caused by the breach of statutory duty. Peckham, supra, 895 F.2d at 841 (citations omitted). Otherwise put, the fee award is limited to the time spent regarding the proven chapter 93-A violation. Id.

Defendant suggests the court should adjust the fee claim accordingly in light of plaintiff's limited success on his other claims. More importantly, however, plaintiff and his counsel here entered into a contingent fee contract, and "where the contract for employment of counsel provides a clear and workable formula for determining the amount of fees, the terms of the agreement will usually control." Northern Heel Corp., supra, 851 Supp. at 475.

Accordingly, the court finds and rules that plaintiff is entitled to an award of attorney fees of one-third of $25,000, or the sum of $8,333.34.

10

## 4. Conclusion

The court has denied defendant's motion for judgment as a matter of law pursuant to Rule 50(b), Fed. R. Civ. P., or for new trial, or, alternatively, for remittitur of the verdict awarded under RSA 358-A. Document 61. The court has, however, vacated the verdict of $5,000 for breach of contract, finding such to be duplicative of the award made for violation of RSA 358-A.

The court has granted, in part only, plaintiff's motion for an award of attorney fees (document 59), and has directed a fee award of $8,333.34.

The clerk is directed to promptly enter an amended judgment in accordance with the terms of this order.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

December 3, 1996

cc:  Anthony Demetracopoulos, Esq.
     Thomas J. Pappas, Esq.
     Sarah Ruef Luck, Esq.

11