Rockingham
No. 2000-670

CRICKLEWOOD ON THE BELLAMY CONDOMINIUM ASSOCIATION

v.

CRICKLEWOOD ON THE BELLAMY TRUST

Argued: March 7, 2002
Opinion Issued: May 24, 2002

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Christopher E. Grant* on the brief and orally), for the plaintiff.

*Shaines & McEachern, P.A.*, of Portsmouth (*Paul McEachern* and *Alec L. McEachern* on the brief, and *Paul McEachern* orally), for defendants Cricklewood on the Bellamy Trust and Cricklewood Trust.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Christopher Cole* on the brief and orally), for defendant Bellamy River Village LLC.

DUGGAN, J. The plaintiff, Cricklewood on the Bellamy Condominium Association (association), appeals an order of the Superior Court (*Galway,* J.) granting summary judgment in favor of defendant Bellamy River Village LLC (BRV), and holding that defendant Cricklewood on the Bellamy Trust's (CBT) motion for summary judgment was moot. The association argues that defendants CBT and Cricklewood Trust invalidly transferred an easement over the association's land to BRV. We affirm.

The early history of the legal problems with the easements at issue in this case is outlined in *Hawthorne Trust v. Maine Savings Bank,* 136 N.H. 533, 535 (1992). In summarizing the relevant facts of this case, we incorporate by reference many of the facts detailed in *Hawthorne Trust. See id.* at 535-36.

In 1986, Hampstead Outlook, Inc. (Hampstead), the owner of the Hawthorne Trust property, entered into a purchase and sale agreement with Joseph H. Johnson, Jr. for three parcels of property. *See id.* at 535. Hampstead agreed to sell, and Johnson agreed to purchase, the parcels in a three-phase transaction. *See id.* On February 6, 1987, Johnson, acting through his nominee corporation, Bay Forest Development Corporation, purchased the first parcel (Parcel 1), and shortly afterward gave a mortgage on it to Maine Savings Bank. *See id.* Johnson, however, defaulted on his option to purchase the other two parcels. *See id.*

Under section 10 of the 1986 purchase and sale agreement, the parties agreed that if Johnson defaulted on his option to purchase the second parcel (Parcel 2), Johnson "shall provide legal access to Hampstead or its Nominee over Parcel 1 to a public way for Parcel 2." *Id.* (brackets omitted). After Johnson defaulted on his option to purchase Parcel 2, Hampstead conveyed title to Parcel 2 to its nominee, Hawthorne Trust. *See id.* On June 23, 1989, Bay Forest Development Corporation granted Hawthorne Trust three easements for transportation, utility, and sewer access across Parcel 1 (1989 easements). *See id.* At this time, Parcel 1 (owned by Bay Forest Development Corp.) became the servient tenement and Parcel 2 (owned by Hawthorne Trust) became the dominant tenement.

In 1989, Johnson defaulted on his debt to the bank. *See id.* After discovering that Maine Savings Bank was planning a foreclosure sale on Parcel 1, Hawthorne Trust brought suit to enjoin the foreclosure sale and to determine the validity and nature of its interests in the easements. *See id.* at 535-36. The Superior Court (*Dickson,* J.) denied Hawthorne Trust's temporary restraining order and Parcel 1 was sold at foreclosure to Maine Savings Bank's wholly-owned subsidiary, which eventually resold the parcel to CBT. *See id.* at 536. Joseph Sawtelle, as the trustee of CBT, intervened in the suit to determine whether CBT purchased Parcel 1 subject to the 1989 easements. Sawtelle filed a motion to dismiss, which

the trial court granted on the basis that Maine Savings Bank was a bona fide purchaser for value under RSA 477:3-a (2001) and that its foreclosure on the servient property extinguished the 1989 easements. *See id.*

Hawthorne Trust thereafter appealed. Prior to the *Hawthorne Trust* case being appealed, Sawtelle submitted Parcel 1 to condominium ownership. On August 30, 1990, before submitting the land to condominium ownership, Sawtelle conveyed and recorded easements for ingress and egress, utilities, water and sewer to a separate trust, Cricklewood Trust. On September 4, 1990, CBT filed its declaration of condominium, expressly disclosing that the submitted land was subject to the easements. In its public offering statement for phase 1, dated September 17, 1990, CBT again disclosed these easements and the then-pending litigation as follows:

> *Litigation*: No Legal proceedings have been brought against the Declarant. Declarant has, however, joined as a party defendant in an action pending in Strafford County Superior Court entitled 89-E-175 *Hawthorne Trust v. Maine Savings Bank*, in which the plaintiff, Hawthorne Trust, seeks to enforce easements for water, sewer, utilities and ingress and egress over the submitted land. Hawthorne Trust is the owner of abutting land to the west. Similar easements granted by Bay Forest Development Corp. to Hawthorne Trust were extinguished by the foreclosure of the mortgage to Maine Savings Bank. The declarant has conveyed these easements to Cricklewood Trust, so that in the event they are ultimately granted to the owners of the Hawthorne Trust property, it can be accomplished without the approval of the Unit Owners or the Cricklewood on the Bellamy Condominium Association.

The Cricklewood Trust easements were also disclosed in the condominium site plans, and in the deeds given to subsequent purchasers of the CBT condominiums.

On Hawthorne Trust's appeal of the trial court's dismissal of its case, we reversed and remanded, concluding that when Johnson mortgaged Parcel 1, Maine Savings Bank took the mortgage with "actual knowledge of [Section 10 of the 1986] agreement," and with actual knowledge of the legal access easement interests. *See Hawthorne Trust*, 136 N.H. at 537. We therefore concluded that the mortgage conveyance to the Maine Savings Bank was not a conveyance to a bona fide purchaser for value without notice and ruled that Hawthorne Trust's right of legal access under section 10 of the 1986 agreement was not extinguished by Maine Saving Bank's subsequent foreclosure. *See id.* Because the purchase and sale agreement

only stated that an easement for "legal access" would be granted, we remanded "for a determination of the scope of the plaintiff's interest created by the purchase and sale agreement and the propriety of the recorded easements." *Id.* at 540.

After *Hawthorne Trust* was remanded, Sawtelle and Hawthorne Trust entered into a settlement agreement in which Sawtelle, as trustee of CBT and Cricklewood Trust, agreed to grant Hawthorne Trust and its assignees "access and egress easements, and utility and construction easements . . . ." Under the settlement agreement, Hawthorne Trust was obligated to pay CBT and Cricklewood Trust the sum of $7,000 per additional residential or commercial unit built on its property when the unit was sold or leased, up to a total of $200,000. The settlement agreement was approved by the Superior Court (*Mohl,* J.) and recorded in the Strafford County Registry of Deeds. In 1999, Sawtelle, on behalf of Cricklewood Trust, formally conveyed the Cricklewood Trust easements to BRV, Hawthorne Trust's successor in interest to the dominant tenement.

The association commenced this action requesting, among other things, reformation of the easements. The association asked the court to either invalidate the easements currently held by BRV or to reallocate the financial benefits of the easements to the association on the basis that the 1989 easements were extinguished, either when the bank foreclosed on the property in 1990, or when CBT transferred the easements to Cricklewood Trust in 1990. In the alternative, the association challenged the validity of the 1994 settlement between CBT and Hawthorne. All parties filed cross-motions for summary judgment. The trial court granted summary judgment in favor of BRV upholding its easements on the basis that: (1) our decision in *Hawthorne Trust* unequivocally held that the purchase and sale agreement created an easement interest that still existed; (2) CBT, as the servient tenement, properly transferred its financial interest in the easement to Cricklewood Trust; and (3) the plaintiffs had no standing to challenge the propriety of the settlement agreement. This appeal followed.

Summary judgment is proper only if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* RSA 491:8-a, III (1997). In this case, the parties filed cross-motions for summary judgment on a set of undisputed facts. Thus, we need only review, *de novo,* the trial court's application of the law to the facts. *Iannelli v. Burger King Corp.,* 145 N.H. 190, 193 (2000).

We first address whether the trial court correctly concluded that CBT, as the servient tenement, properly transferred easements for sewer, utility and transportation to Cricklewood Trust. The association argues that CBT's transfer of the easements to Cricklewood Trust was an invalid transfer because the easement interests at issue could only be held by the

dominant tenement, Hawthorne Trust, and were incapable of existing apart from the dominant tenement.

An easement is a nonpossessory interest in real property that can be created by written conveyance, prescription or implication. *See Waterville Estates Assoc. v. Town of Campton*, 122 N.H. 506, 508 (1982). An appurtenant easement is "an incorporeal right generally created for the purpose of benefiting the owner of the dominant estate [and that] ... runs with the land, is incapable of existence separate and apart from the dominant tenement, and is inheritable." *Quality Discount Market Corp. v. Laconia Planning Bd.*, 132 N.H. 734, 739 (1990) (ellipses omitted). It is well settled that a dominant tenement's interest in an easement cannot be severed from the land by transferring it to a third party. *See* R. CUNNINGHAM ET AL., THE LAW OF PROPERTY § 8.10 (2d ed. 1993). For example, BRV as the current owner of Parcel 2 (the dominant tenement), could not transfer its interest in the easement over Parcel 1 (the servient tenement) to a third party.

The owner of the servient tenement holds a concurrent but distinct interest in the easement. It is the servient tenement that is burdened by the easement and owes "the service to which the owner of the easement is entitled." RESTATEMENT OF PROPERTY § 455 (1944). This burden rests upon the possessor of the servient tenement and becomes incidental to possession. *See id.* Because the "service to which the owner of the easement is entitled" is a burden which rests upon the possessor of the servient tenement, it is similar to the dominant tenement in that this obligation generally cannot be severed from the land. *Id.*; *see also* RESTATEMENT (THIRD) OF PROPERTY § 4.7 comment *a* at 557-58 (2000) (explaining delegability and transfer of servitude burdens).

Although the owner of a servient tenement cannot sever the obligations it owes to the easement holder from its land, the owner of a servient tenement may convey a similar easement in the same strip or part of the land covered by a prior easement. *See* Annotation, *Easement as Precluding Subsequent Acquisition of Easement in Same Land by Third Person*, 133 A.L.R. 1200, 1201 (1941); *see also* 25 AM. JUR. 2d *Easements and Licenses in Real Property* § 98 (1996). Thus, irrespective of whether a similar easement in the land had been previously conveyed, the owner of a servient tenement retains the power to transfer the right to use its land to a third person so long as it does not unreasonably interfere with any prior easements granted. *See* Annotation, 133 A.L.R. at 1203; *see also City of Pasadena v. California-Michigan Land & W. Co.*, 110 P.2d 983, 986 (Cal.

1941) (holding that the grant of an easement to lay underground pipes along a defined strip does not restrict the owner of the servient tenement from granting a like easement to a third party so long as the second easement does not unreasonably interfere with the original easement holder's use).

The association, as the current owner of the servient tenement, asserts that CBT improperly attempted to sever the 1989 easements from Parcel 1 by conveying them to a third party, Cricklewood Trust. Because the obligations of the servient tenement to the holder of an easement cannot be severed from the land, the association argues that the transfer of the 1989 easements to Cricklewood Trust was an "entirely invalid transfer and no interest was conveyed as a matter of law because the Cricklewood Trust could not hold the interest as a matter of law." In light of the circumstances surrounding the conveyance of the 1989 easements to Cricklewood Trust, we disagree with the association's argument that CBT improperly attempted to sever the 1989 easements from its land. *See* RESTATEMENT (THIRD) OF PROPERTY § 4.1(1) ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude . . . .").

In this case, the record reveals that CBT did not intend to sever the 1989 easement from the land, but rather intended to convey similar easements in favor of Cricklewood Trust. At the time CBT submitted Parcel 1 to condominium ownership, the superior court had declared the 1989 easements to be extinguished by the foreclosure. Because CBT believed the 1989 easements to be extinguished, it conveyed similar easements to Cricklewood Trust "so that in the event they were ultimately granted to the owners of the Hawthorne Trust property [the dominant tenement], it can be accomplished without the approval of the Unit Owners of the Cricklewood on the Bellamy Condominium Association." Thus, because the status of the 1989 easements for sewer, utility and transportation was uncertain, CBT redrafted those easements and conveyed them to Cricklewood Trust.

In light of the uncertainty surrounding the 1989 easements, it becomes apparent that Hawthorne Trust did not intend to sever the pre-existing 1989 easements from the land, but rather intended to grant similar easements in favor of Cricklewood Trust. As previously discussed, this transfer was valid because CBT, as the owner of the servient tenement, had the right to convey easements on its property so long as they did not interfere with the dominant tenement's use. Here, there is no evidence in the record that the conveyance of easements created any interference with

the 1989 easements. In fact, CBT conveyed these easements to Cricklewood Trust for the sole purpose of transferring them to the dominant tenement in the event the original 1989 easements were declared invalid.

The association further argues that the Cricklewood Trust easements are invalid because they convey more than what was intended by the 1986 purchase and sale agreement, which only provided the "right to legal access." We disagree. CBT had the right to grant easements on its property to a third party, and here CBT expressly conveyed easements for sewer, utility, transportation, ingress and egress to Cricklewood Trust. As CBT informed the association that the submitted land was subject to all of the foregoing easements, the association was on notice that the condominium property was burdened by easements that may have extended beyond mere "legal access."

The association lastly argues that CBT should be judicially estopped from arguing that the post-mortgage easements were not extinguished in foreclosure. Because the association did not raise this issue in its notice of appeal, the association has waived this issue and we will not consider it. *See Simplex Technologies v. Town of Newington*, 145 N.H. 727, 732 (2001). In light of the foregoing, we determine that the trial court properly granted summary judgment and therefore deny reformation of the contract. *See A.J. Cameron Sod Farms v. Continental Ins. Co.*, 142 N.H. 275, 282-83 (1997) (holding that reformation of contract may only be granted where there is fraud or mutual mistake of fact).

*Affirmed.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred.