Walter E. BOSLEY and Bernice W. Bosley, Plaintiffs,

v.

CABOT OIL & GAS CORPORATION OF WEST VIRGINIA, Defendant.

Civ. A. No. 2:85–0164.

United States District Court, S.D. West Virginia, Charleston Division.

Jan. 14, 1986.

---

Marvin W. Masters, Masters & Taylor, Charleston, W.Va., for plaintiffs.

E. Glenn Robinson, Robinson & McElwee, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

This case comes before the Court on the Defendant's motion for summary judgment. The motion has been fully briefed and the Court now deems it mature for decision.

### I. *Background*

The Plaintiffs filed this action in the Circuit Court of Kanawha County, West Virginia. The Defendant thereupon removed it to this Court. The action stems from a dispute over a right-of-way which has been shared with fluctuating degrees of amicability by the Plaintiffs and the Defendant. The Plaintiffs claim that the right-of-way is exclusively theirs. Conversely, the Defendant claims not one but two sources for its right to cross the property in question.

The Plaintiffs, Mr. and Mrs. Bosley, purchased their property from an adjoining landowner, Freeda McClanahan, in 1965. The deed effecting the transfer granted the Bosley's a right-of-way over McClanahan's property. Mrs. McClanahan subsequently sold her property to Eugene Comer. Thus, the Bosley's right-of-way now passes over land owned by Comer.

On or about January 10, 1969, the Defendant, Cabot Oil & Gas, acquired a right-of-way over the Comer property in anticipation of locating a well on another landowner's property. Sometime in 1971 Cabot drilled a well on the site. It gained access to the well by traveling across the Comer property via the Bosley right-of-way. By this time the right-of-way had become an improved roadway, complete with a small bridge, by which the Plaintiffs traveled to their residence. Apparently the drilling activity in 1971 resulted in some degree of damage to the Bosley's roadway. The Plaintiffs retained an attorney and a settlement was reached between the parties. As part of the settlement, the Defendant acquired a right-of-way from the Plaintiffs. The duration of this right-of-way is disputed by the parties.

Following completion of the well, the Defendant continued to use the Bosley right-of-way to tend its well. Uncontroverted is its assertion that the roadway was traveled on a daily or weekly basis by light trucks as part of the regular maintenance. The Plaintiffs made no complaints about such use until November of 1984. On November 26, 1984, the Defendant moved a service rig onto the well site. It was removed on December 20, 1984. During these oper-

ations the Defendant accessed the well site by traveling over the Bosley roadway. The Plaintiffs now claim that the Defendant had no right to use their roadway and that such use resulted in damage to same.

## II. *Discussion*

■ The Defendant attempts to characterize the Plaintiffs' case as one grounded in trespass.[1] All the arguments in its memoranda are directed to that point. While it is clear that trespass is a major contention of the Plaintiffs, the Court finds that the Defendant reads the Plaintiffs' complaint too narrowly. The complaint charges that the "Defendant negligently, carelessly, wrongfully and unlawfully and intentionally entered upon [the] Plaintiffs' property and right-of-way and damaged the roadway leading to their home." Although the complaint is lacking in detail, it surely meets the requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." *Rule* 8(a)(2), Federal Rules of Civil Procedure. From a reading of the complaint, the Court discerns that the Plaintiffs are complaining that (1) the Defendant had no right to use their roadway and (2) even if it had such a right, the Defendant unreasonably used the right-of-way. Naturally, the Plaintiffs' case is a much stronger one if the trespass issue remains; however, it is not the only issue upon which the Plaintiffs can state a case. The Court considers the Plaintiffs to have pled a case for unreasonable use of a right-of-way. Thus, resolution of the Defendant's summary judgment motion will be not extinguish in toto the Plaintiffs' case. Therefore, the Defendant's motion is at best one for partial summary judgment and will be treated as such.

A crucial issue in this litigation is whether the right-of-way enjoyed by the Plaintiffs is "exclusive." The Plaintiffs contend that it is of such nature. The Defendant disagrees. Another way to state the issue is to ask whether the owners of the servient estate, McClanahan and Comer, had the right to grant successive rights-of-way to the litigants.

The undisputed facts show that McClanahan conveyed a right-of-way to Plaintiffs in 1965 as part of the transfer of an adjoining tract. The grant of the right-of-way was reflected by the following language in that 1965 deed:

"As part of the consideration hereinabove stated, the party of the first part grants and conveys unto the party of the second part, his heirs, administrators, executors and assigns, a certain right-of-way and easement to be used for driveway purposes, permitting ingress and egrees to and from West Virginia Secondary Route No. 7 and the property hereinabove described and conveyed; said right-of-way and easement is to be eight (8) feet in width and is more particularly described and shown on the aforesaid map attached hereto and recorded herewith."

The deed does not state that the right-of-way is to be exclusive. By the same token it does not reserve the use of the right-of-way to the grantor, her heirs or assigns. The parties seize upon these omissions to support their respective positions.

Comer, the successor of McClanahan, granted a right-of-way to the Defendant in 1969. The grant was contained in a one-page contract. For the consideration of $400.00, the contract, in form language, gave the Defendant "the right to construct, maintain and use a roadway over and across the land" of Comer. No mention was made of the Bosley right-of-way; nor did the contract specify where the right-of-way was to cross the Comer property.

■ Pointing out that their right-of-way was distinctively marked on a plat accompanying their deed, the Plaintiffs argue that this specificity as to location should somehow enable them to prevail over the more general granting language of the Defendant's right-of-way. The Plaintiffs seem to imply that because the Comers did

---

1. "Trespass" as used here is intended to mean unlawful entry. In other words, the Plaintiffs are claiming that the Defendant had no legal right to be on Plaintiffs' right-of-way.

not specify where the Defendant's right-of-way was to be located, they meant for it to be someplace other than along their route. The law in West Virginia, however, provides that if an easement is granted without specification as to location, the practical use of the easement by the parties will fix this location. *Hoffman v. Smith*, 310 S.E.2d 216, 220 (W.Va.1983); *see also Rhodes Cemetery Association v. Miller*, 122 W.Va. 139, 7 S.E.2d 659 (1940). The record here reflects that the Defendant used the Bosley right-of-way for approximately thirteen years with no objection by Comer as to location. Indeed, common sense would indicate that Comer would prefer the Defendant to use the existing roadway rather than disturbing his property by creating another. With this in mind, the Court now squarely addresses the question of whether Comer could grant a second party, the Defendant, a right-of-way along the same route previously designated for use by the Plaintiffs.

The Plaintiffs argue that once McClanahan conveyed the right-of-way to the Plaintiffs in 1965, she and her assigns had exhausted their ability to make further assignments. This question of successive assignments was addressed by the West Virginia Supreme Court in *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968):

> "We are of the opinion that the owner of a servient estate may grant successive easements for travel over the same road or way to various persons; that the owner of the servient estate may continue thereafter to use his property in any manner and for any purpose reasonably consistent with the enjoyment of the easement by the various persons entitled thereto; and that no person having an easement for travel over such road or way in common with others can be heard to object to any use of or change in the character of such way or road by the other users or by the owner of the servient estate so long as the rights of the one complaining are not thereby interfered with in an undue or unreasonable manner."

*Id.* at 112, 159 S.E.2d at 797, *quoted in Rippetoe v. O'Dell*, 276 S.E.2d 793, 796 (W.Va.1981). The Plaintiffs attempt to distinguish *Sanders* and *Rippetoe* with the argument that the conveying owners in those cases had reserved the right to make further conveyances. Whether this is correct is not reflected in the opinion of either case. Given the silence of the West Virginia court on the question in both holdings, the converse would appear to be true. More particularly, unless a grantor specifically gives up the right to create further estates, he is presumed to retain such a right.[2]

Public policy arguably supports the right of the servient estate owner to grant successive easements. An easement such as a right-of-way is a limited property interest. Generally, the holder of the interest is most concerned with traversing the servient estate. Unlike other property interests, there is no inherent conflict with sharing this type of interest with someone else. If a right-of-way given under this state of facts was presumed to be "exclusive," a servient estate could be subjected to the wasteful result of playing host to two or more roadways where one would suffice. Conservation of economic resources and the ecology of the servient estate are best served by precluding where possible duplicative easements.

The Plaintiffs' reliance on the term "exclusive" may reflect a misunderstanding of that term's connotation vis-a-vis ownership of a right-of-way. In the vintage case of *McNeil v. Kennedy*, 88 W.Va. 524, 107 S.E. 203 (1921), the court noted that other parties with interests in a right-of-way could not affect the plaintiff's "exclusive" right. The court used "exclusive" "in the sense that no one else may lawfully oppose him

---

**2.** In *Kell v. APCO*, 289 S.E.2d 450 (W.Va.1982), the West Virginia Supreme Court held that a power company which had been granted a right-of-way easement over some land for the purpose of constructing and maintaining a power transmission line did not have a right to exclusive possession of the right-of-way conveyed.

in that right." *Id.*, 88 W.Va. at 528, 107 S.E. 203. Thus, although the Plaintiffs may have to share the right-of-way with the Defendant, the Defendant may not interfere with the Plaintiffs' use of the right-of-way. *See Kell*, 289 S.E.2d 450. The Plaintiffs are protected by restraint of "reasonableness" placed upon the Defendant. If the Plaintiffs believe themselves injured by the Defendant's conduct, the relief is to bring an action for damages. The Court finds this to be such an action. The action, however, is not against one who has no right to travel the right-of-way, but is against one who may have exceeded its right to do so.

The Defendant alternatively argues that it acquired a valid right-of-way from the Plaintiffs themselves. It asserts that it made such an acquisition out of an abundance of caution. The record reflects that the right-of-way was conveyed during the time the well was being developed. The conveyance was part of a settlement agreement springing from charges by the Plaintiffs that the Defendant had damaged their roadway. The document of conveyance reflected a consideration of $2,500.00. The Defendant contends that that right-of-way agreement continues to be valid. The Plaintiffs, on the other hand, argue that the right-of-way was limited to the purpose of completing the drilling of the well. Because the Court's treatment of the first right-of-way is dispositive of the motion, the Court will not tarry long on this point.

The contract by which the Plaintiffs granted the Defendant a right-of-way is somewhat ambiguous as to duration. On that subject it contained the following paragraph:

> "Second party shall, upon the termination of this easement, surrender to first parties the right-of-way here granted in the condition granted, together with all alterations and repairs thereon in good order, condition and repair, except for reasonable wear and use thereof."

The wording is a tautology. It says nothing. Notwithstanding such ambiguity, the Plaintiffs' argument that the right-of-way was of limited duration is disingenuous. First, it is inconceivable that the Defendant would enter into such an agreement when both parties knew that continued access would be necessary to service the well. Second, for thirteen years the Defendant, without apparent objection by the Plaintiffs, continued to travel over the Plaintiffs' roadway. "The practical interpretation of the parties to a grant of a right-of-way is very persuasive of what they intended." *Palmer v. Newman*, 91 W.Va. 13, 20, 112 S.E. 194 (1922). Third, the sum of $2,500.00 would appear to be an excessive price for a short term easement, especially considering the $400.00 price paid to the Comers just two years prior. Fourth, if the Plaintiffs wished to place a time limit on the right-of-way, they certainly could have employed language of greater precision.

If the Defendant's motion turned on the interpretation of this right-of-way contract alone, the Court would consider receiving parol evidence to aid in the interpretation of what could be considered an ambiguous passage. Given that such an interpretation is not necessary to the result reached here, the Court merely notes the weakness of the Plaintiffs' position and moves on.

The uninterrupted use of the Bosley roadway by the Defendant for approximately thirteen years leads the Court to an area which is not addressed by either party. It is quite probable that the Defendant's usage has given it—if all else fails—a right-of-way by prescription. The West Virginia Supreme Court has described the elements of such an easement:

> "To establish an easement by prescription there must be continued and uninterrupted use or enjoyment for at least ten years, identity of the thing enjoyed, and a claim of right adverse to the owner of the land, known to and acquiesced in by him; but if the use is by permission of the owner, an easement is not created by such use."

*Veach v. Day*, 304 S.E.2d 860, 862 (W.Va. 1983) (*quoting Town of Paden City v. Felton*, 136 W.Va. 127, 138, 66 S.E.2d 280, 287

(1951)). The Court notes without deciding that this test appears to be met by the Defendant's course of conduct.

### III. *Conclusion*

For the foregoing reasons, the Court grants the Defendant's motion for summary judgment. As mentioned, such a decision does not completely resolve this case. Remaining is the question of whether the Defendant's use of the Bosley right-of-way unduly interfered with the Plaintiffs' rights. Given this outcome, the Court denies at this time the Defendant's request for an award of costs and attorney fees.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.