595 A.2d 220

Raymond J. RODIER

v.

**TOWNSHIP OF RIDLEY, Board of Commissioners of the Township of Ridley, Zoning Hearing Board of Ridley Township and Ed Miller, Code Enforcement Officer of the Township of Ridley.**

**Appeal of TOWNSHIP OF RIDLEY.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1990.

Decided July 9, 1991.

Peter J. Rohana, Jr., Media, for appellant.
David C. Corujo, Media, for appellee.

Before PALLADINO and KELLEY, JJ., and CRUMLISH, Senior Judge.

KELLEY, Judge.

This is an appeal by the Township of Ridley from an October 18, 1989 order of the Court of Common Pleas of Delaware County regarding two permit applications made by Raymond J. Rodier. We affirm.

On September 1, 1988, Rodier applied with the township for a grading permit and approval of a subdivision plan. Although the township denied Rodier's subdivision plan application on November 16, 1988, and sent him a letter to that effect sometime in early December, 1988, the township never formally acted upon his grading permit.

Rodier filed a complaint in mandamus and a petition requesting a preliminary injunction on February 16, 1989, asserting that his grading permit application should be deemed approved,[1] because the township failed to grant or deny that application within ninety days after it had been filed. The trial court conducted a hearing on March 13, 1989, and issued an order indicating that, upon a stipulation by counsel, the township agreed to issue a grading permit to Rodier. However, counsel for the township contested that order, claiming that he had not so stipulated. He then filed an appeal to this Court, which was subsequently withdrawn.

The trial court conducted another hearing regarding Rodier's grading permit on September 20, 1989, after which it held that Rodier's permit was deemed approved, because the township acknowledged that no decision was rendered on the application and that it never formally acted on the grading plan.[2] The trial court's October 18, 1989 order

1. "Deemed approval" refers to the "conclusive presumption" that a zoning hearing board has ruled in the applicant's favor. *Foltz v. Monroeville,* 5 Pa.Commonwealth Ct. 304, 290 A.2d 269 (1972).

2. Although Rodier also sought deemed approval of his subdivision plan at this hearing and presented testimony pertaining to when the notice disapproving that plan was mailed, postmarked, and received,

which granted Rodier leave to proceed with grading, and instructed the township to issue a grading permit and to refrain from interfering with Rodier's grading, is the subject of this appeal.[3]

The township presents the following issues for our review: whether the trial court erred by finding that Rodier's grading permit should be deemed approved; whether the trial court improperly granted Rodier's request for injunctive relief; whether Rodier's application was so deficient that the township was relieved of its duty to act promptly; and, whether Rodier's grading substantially interferes with the township's easement.

■ The trial court relied on the provisions of Section 1 of the Act of July 9, 1976, P.L. 919, *as amended*, 53 P.S. § 4104, in finding that Rodier's grading permit should be deemed approved. Section 1 provides:

> (a) A municipality which regulates the construction, erection, maintenance, operation or repair of buildings, structures or devices by means of an ordinance requiring the filing of an application, the payment of a fee and the issuance of a permit shall render a decision either approving or disapproving the application for a permit within 90 days after the application is filed unless the ordinance requires a decision within a lesser period of time, provided that any disapproval of the application shall be issued within said 90-day period containing a brief explanation setting forth the reasons for said disapproval and the manner in which the application can be corrected and/or modified to obtain the required approval. If no decision is rendered on the application within 90 days, the application shall be deemed to be approved and the permit shall be deemed to have been granted immediately, unless the applicant has agreed in writing to an extension of time.
>
> . . . .

the issues before us, as raised by the township, relate only to Rodier's grading permit.

**3.** The effective date of that order was amended to December 21, 1989, because a copy had not been served on the attorney for the township.

(c) As used in this section, "buildings, structures or devices" means anything constructed or erected with a fixed location on or in the ground including dwellings, offices, places of assembly, mobile homes, signs, walls, fences, or other improvements to real estate.

Township Ordinance No. 1362 regulates grading by requiring the filing of an application, the payment of a fee and the issuance of a permit. It is undisputed that Rodier complied with these requirements. However, the township argues that Section 1 does not apply to grading permits because its scope is limited to construction, erection, maintenance, operation or repair of buildings, structures or devices. In support of this contention, the township argues that soil displacement is not "construction," implying that Section 1 could only apply to grading if grading were synonymous with construction. *Briar Creek Borough v. Berlin*, 62 Pa.Commonwealth Ct. 197, 435 A.2d 673 (1981). We refuse to adopt such an unduly restrictive reading of § 4104.

*Briar Creek* is distinguishable from the case before us because that case did not involve an ordinance which required a grading permit, and, more importantly, did not raise the issue of administrative delay. The sole issue there was whether grading constituted "new construction" within the meaning of a borough ordinance requiring a building permit for new construction. The issue here is whether a grading permit is contemplated within the language of Section 1, and if so, whether the township's delay was improper.

■ It has long been the position of this Court that the legislature, in enacting a statute, is presumed not to have intended an absurd, illogical or unreasonable result. *Summit School, Inc. v. Department of Education*, 43 Pa.Commonwealth Ct. 623, 402 A.2d 1142 (1979); 1 Pa.C.S. § 1921. This Court may look to other similar statutory provisions, to the object to be obtained, and to the consequences of a particular interpretation, in determining the legislative intent. *Department of Transportation, Bureau of Traffic*

*Safety v. Von Altimus*, 49 Pa.Commonwealth Ct. 245, 410 A.2d 1303 (1980).

The purpose of the "deemed approval" provisions found throughout Pennsylvania zoning law is to curb the evils of procrastination by forcing municipalities to take prompt action in approving or disapproving various applications.[4] These provisions parallel the provisions of Section 1, and indicate a broad legislative policy in favor of prompt action.

Were we to accept the township's position that grading permits are not subject to the provisions of Section 1, we would condone and encourage the very delay, procrastination, and frustration of decision that deemed approval provisions were intended to prevent. *See Bucks County Housing Development Corp. v. Plumstead Township*, 45 Pa.Commonwealth Ct. 532, 406 A.2d 832 (1979).[5] This we cannot do. Therefore, we agree with the trial court's position that Section 1 applies to grading permit applications.

 The township also contends that the trial court erred by granting preliminary injunctive relief in a mandamus action. It is well established that mandamus is the appropriate means of compelling a municipality to issue a permit in a deemed approval proceeding when it has failed to act within the time prescribed by statute. *See Township of East Taylor v. Spanko*, 128 Pa.Commonwealth Ct. 24, 562 A.2d 962 (1989); *Foltz; Bucks County Housing*. In addition, equity jurisdiction may not be exercised in order to grant injunctive relief, if an adequate remedy exists at law.

4. *See* §§ 508, 709(a), and 908(9) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10508, 10709(a), 10908(9); *Penn Advertising, Inc. v. Kring*, 129 Pa.Commonwealth Ct. 402, 565 A.2d 1238 (1989).

5. It is of no consequence that Rodier's application for a grading permit was filed at or near the same time as his subdivision plan which was not approved. As evidenced by the township's own ordinances, one which addresses grading and another which applies to subdividing, these activities are independent of each other. Therefore, Rodier should be permitted to grade, regardless of whether or not his subdivision plan had been approved.

*Bronstein v. Sheppard,* 50 Pa.Commonwealth Ct. 199, 412 A.2d 672 (1980).

A great deal of confusion seems to have arisen in this case due to the fact that Rodier concurrently filed a mandamus action and a petition for a preliminary injunction. In his mandamus action, Rodier sought a grading permit based on deemed approval. He sought a grading permit through his petition for injunctive relief based on alleged immediate and irreparable economic harm. Rodier used the term "mandamus" in the caption of his complaint as well as in the caption of his petition for injunctive relief.

The township argues that the trial court's grant of injunctive relief was improper because a remedy at law was available to Rodier through an action in mandamus and, because Rodier's allegation of irreparable harm was based solely on economic concerns which could be remedied in the form of damages. The trial court addresses its grant of an injunction in its opinion, pointing out that its order directing the township to refrain from interfering with Rodier's grading was supplemental injunctive relief granted pursuant to its decision in the mandamus action.[6]

We note that any grading that was done on Rodier's property prior to the trial court's order was done without a valid order. Once the grading permit is issued, the township cannot legally interfere with the proposed grading and the injunctive language in the trial court's order was therefore unnecessary. While we agree that the trial court should not have granted an injunction in this case, that portion of the trial court's order is superfluous and in no way affects the disposition of this case.

■ Next, the township contends that Rodier's application was vague and that it did not meet the township's

---

**6.** A review of the record reveals that the trial court may have instructed the township to refrain from interfering with Rodier's grading, based on information presented at the proceedings on March 13, 1989, that township police had visited Rodier's property to enforce the township's grading permit ordinance, although Rodier had never received a citation.

guidelines. Although Rodier claims the township raised this issue for the first time on appeal, it was, in fact, raised below. In addition, we have held, with regard to other deemed approval provisions, that a municipality may not rebut a deemed approval by arguing that the application in question was incomplete or inadequate, when it failed to reject the application on those grounds. *Township of O'Hara v. DiSilvio*, 51 Pa.Commonwealth Ct. 50, 413 A.2d 1174 (1980).

■ Finally, the township claims that Rodier's grading activity would create a substantial burden on the township's sewerage easement. The property which the trial court permitted Rodier to grade was subject to a sewer easement in favor of the township which is approximately fifteen feet wide by fifty feet long. Rodier intended to fill a fifteen to twenty foot wide ditch in which a section of the sewerage lines are located in order to bring the ditch to grade. Evidence presented at the hearing on September 20, 1989 indicates that a substantial portion of the sewer lines located on Rodier's property are already below grade. Rodier also testified that no construction was planned over the ditch.

The owner of a servient estate may use the land for any purpose so long as the use is reasonable and does not interfere substantially with an easement. *Associates of Philipsburg v. Hurwitz*, 292 Pa.Superior Ct. 406, 437 A.2d 447 (1981). The township claims that its right to make improvements and its duty to make repairs to the sewer lines will be substantially interfered with if Rodier is permitted to place some twenty feet of dirt on top of the lines. The township is also concerned that the integrity of the lines would be jeopardized by the weight of trucks transporting soil for grading. The trial court's order allowing Rodier to proceed indicates that no substantial interference would result and, based on a careful review of the record, we agree.

Accordingly, we affirm.

This decision was reached prior to the retirement of Senior Judge CRUMLISH, Jr.

## ORDER

NOW, this 9th day of July, 1991, the order of the Court of Common Pleas of Delaware County, No. 89–2241, dated January 4, 1990, is affirmed.

This decision was reached prior to the retirement of Senior Judge CRUMLISH, Jr.