**EPHRATA AREA SCHOOL DISTRICT, Appellant**

v.

**COUNTY OF LANCASTER, Borough of Ephrata and Lancaster County Agricultural Preserve Board.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2005.
Decided Nov. 17, 2005.

Kenneth C. Notturno, Lancaster, for appellant.

Melvin E. Newcomer, Lancaster, for appellee, County of Lancaster.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this case of first impression, we are asked whether the holder of a prior open space easement must consent to the grant of a subsequent right-of-way which does not interfere with the open space easement. In particular, Ephrata Area School District (School District) asks whether it was required to obtain the approval of Lancaster County, which secured a prior open space easement from a private landowner, before the private landowner may grant it a right-of-way. Because County approval is not required unless the right-of-way interferes with the existing open space easement, we reverse.

**I.**

The underlying facts of this case are largely undisputed. In 2000, the School District purchased approximately 80 acres of land on which it proposed to construct a public elementary school on the south side of Market Street in Ephrata Township, Lancaster County. The proposed site borders Ephrata Borough.

The School District originally proposed primary access to the elementary school through Market Street. Citing serious traffic and safety concerns, Ephrata Township and Ephrata Borough objected to the use of Market Street for primary access and instead recommended primary access through Hummer Road and secondary access through Meadow Valley Road.

The School District subsequently entered into an agreement to purchase a 50–foot strip of land totaling 2.3 acres from Nelson and Miriam Nolt and David and

Erma Lauver to construct an access road from Meadow Valley Road to the school. The parties later modified the agreement to reflect acquisition of a right-of-way under and subject to the rights of the Lancaster County Agricultural Preserve Board (Board), a County agency, in an open space easement over the Lauvers' property.

The Board voted to approve removal of the 50–foot strip of land from the open space easement. In addition, it subsequently voted to recommend the grant of a right-of-way over the Lauvers' land.

Thereafter, the School District requested the County approve the relinquishment of its easement over the 50–foot strip of land or, in the alternative, approve the School District's acquisition of a right-of-way from the Lauvers. The School District alleges it initially believed County approval was required but now believes such approval is unnecessary. Nevertheless, the School District, hoping to obtain County approval, proceeded with a hearing before the Lancaster County Commissioners on its request.

The County Commissioners subsequently voted to deny the School District's request that it consent to a right-of-way over the 50–foot strip of land and denied the request to extinguish the open space easement. The School District appealed the County's decision to the Court of Common Pleas of Lancaster County (trial court).

Several months later, the School District filed a declaratory judgment action in the trial court seeking a declaration that County approval was not required for the acquisition of a right-of-way over the Lauvers' land. It also sought a declaration its proposed right-of-way did not violate the County's open space easement. The trial court stayed the School District's appeal of the County's decision pending resolution of the declaratory judgment action.

After the close of the pleadings in the declaratory judgment action, the School District filed a motion for judgment on the pleadings or, in the alternative, summary judgment. The School District argued it was entitled to judgment as a matter of law because County approval was not required to obtain a right-of-way over land owned by private landowners. The County filed a cross-motion for summary judgment asserting approval was required. Of particular import here, in its submissions to the trial court, the County conceded the proposed right-of-way would not violate its open space easement.

Ultimately, the trial court issued an opinion and order granting the County's cross-motion for summary judgment and denying the School District's motion. The trial court determined, pursuant to Section 11(a) of what is commonly known as the Open Space Lands Act (Act)[1], the School District was required to obtain County approval for the acquisition of a right-of-way over the Lauvers' property because of the County's open space easement. The trial court further determined, because the County declined to grant approval, it was entitled to summary judgment. The School District appealed to this Court.[2]

---

1. Act of January 19, 1968, P.L. (1967) 992, *as amended*, 32 P.S. §§ 5011(a).

2. Motions for summary judgment are appropriate under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541. *See Borough of Pitcairn v. Westwood*, 848 A.2d 158 (Pa. Cmwlth.2004). Our review of a trial court order granting summary judgment is limited to determining whether the court committed an error of law or abused its discretion. *Id.* Summary judgment is appropriate when, after review of the record in the light most favorable to the non-moving party, it is determined no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.*

## II.

In order to fully evaluate the claims presented, some discussion of the common law principles regarding easements is necessary. We begin by determining the appropriate classification for the County's open space easement.

### A.

 Generally, easements are of two types: easements appurtenant and easements in gross. An easement appurtenant is a liberty, privilege or advantage without profit which the owner of one piece of land has in the land of another. *See Morning Call, Inc. v. Bell Atlantic–Pennsylvania, Inc.*, 761 A.2d 139 (Pa.Super.2000). Stated otherwise, "it is a service which one estate owes to another—or a right or privilege in one man's estate for the advantage or convenience of the owner of another estate." *Perkinpine v. Hogan*, 47 Pa.Super. 22, 25 (1911). The land enjoying the privilege is referred to as the "dominant tenement," and the land subject to the privilege is known as the "servient tenement." *See Ladner on Conveyancing in Pennsylvania*, § 11.01 at p. 1 (Bisel, 4th ed. 1979).

 An easement in gross, on the other hand, is a mere personal right in the real estate of another because it is not appurtenant to other land owned by the grantee. An easement in gross benefits a particular entity rather than a particular piece of land. *See Ladner*, § 11.01 at p. 2. An easement in gross is an easement with a servient estate but no dominant estate. *Kent's Run P'ship, Ltd. v. Glosser*, 323 B.R. 408 (Bankr.W.D.Pa.2005).

The open space easement at issue here is properly classified as an easement in gross because it benefits a particular entity, i.e., the County, rather than a particular piece of land, and there is no dominant estate. *See, e.g.,* John L. Hollingshead, *Conservation Easements: A Flexible Tool for Land Preservation*, 3 Envtl. Law. 319, 328 (1997) (characterizing conservation easement as "a negative easement in gross"). Indeed, the easement agreement at issue here expressly states (with emphasis added), "[t]he restrictions contained herein shall apply to the land as *an open space easement in gross . . . .*" Reproduced Record (R.R.) at 12a. The agreement further states, "this grant of easement in the nature of a restriction *is intended to be an easement in gross . . . .*" *Id.* (emphasis added).

### B.

 Easements are also properly classified as affirmative or negative. *See* Restatement (Third) of Property, Servitudes § 1.2 (2000). Easements are considered "affirmative" if they convey privileges on the part of one person or owner of land to use the land of another in a particular manner or for a particular purpose. *Id.* Easements are considered "negative" if they convey rights to demand the servient owner refrain from certain otherwise permissible uses of his own land. *Id.* With regard to negative easements, the Supreme Court of Virginia recently explained:

Negative easements, also known as servitudes, do not bestow upon the owner of the dominant tract the right to travel physically upon the servient tract, which is the feature common to all affirmative easements, but only the legal right to object to a use of the servient tract by its owner inconsistent with the terms of the easement. In this sense, negative easements have been described as consisting solely of 'a veto power.'

At common law, an owner of land was not permitted at his pleasure to create easements of every novel character and annex them to the land so that the land

would be burdened with the easement when the land was conveyed to subsequent grantees. Rather, the landowner was limited to the creation of easements permitted by the common law or by statute. The traditional negative easements recognized at common law were those created to protect the flow of air, light, and artificial streams of water, and to ensure the subjacent and lateral support of buildings or land.

*United States v. Blackman,* 270 Va. 68, 76, 613 S.E.2d 442, 446 (2005) (citations omitted).

The County's open space easement is also properly classified as a "negative easement" as it requires the Lauvers to retain their property in its agricultural and open space condition. *See* R.R. at 9a–12a.

## C.

▮▮▮▮ Easements are also classified as exclusive or non-exclusive. An "exclusive easement" deprives a servient owner of all beneficial use and enjoyment of his land. 7 *Summary of Pennsylvania Jurisprudence 2d, Property,* § 18:20 (2000). Under Pennsylvania law, "[t]he fee in land may be in one person and the exclusive right to use it as a right of way may be in another, but to accomplish that result *the deed creating the right of way must specifically so covenant." Fedorko Props., Inc. v. C.F. Zurn & Assocs.,* 720 A.2d 147, 149 (Pa.Super.1998) (emphasis added). Absent an express provision in a grant or reservation, an easement is not an exclusive interest in the burdened land. *Id.*

Nothing in the easement agreement here indicates the Lauvers intended to grant the County an exclusive easement. To the contrary, under the agreement, the Lauvers retain the right to use their property in any manner that does not impair its open space and agricultural values. R.R. at 10a. In addition, the agreement

does not prohibit the Lauvers from granting a subsequent right-of-way over their property. Therefore, the County's open space easement is non-exclusive.

## D.

▮▮▮ Finally, the particular "negative easement" at issue here is also properly characterized as a "conservation easement." *See* Vivian Quinn, *Preserving Farmland with Conservation Easements: Public Benefit or Burden?,* 1992/1993 Ann. Surv. Am. L. 235, 238 (conservation easement is designed to preserve servient land in undeveloped or natural state). With regard to the development of conservation easements in modern law, the Restatement (Third) of Property, Servitudes, explains:

> Traditional servitudes doctrines raised potential difficulties for the creation of conservation and preservation servitudes. The primary problem was caused by the rule prohibiting equitable enforcement of restrictive-covenant benefits held in gross. Since most conservation and preservation servitudes are granted to governmental bodies, land trusts, or other charitable entities that engage in conservation or preservation activities, the benefit will usually be in gross. To avoid the rule prohibiting benefits in gross, the parties could either acquire a parcel to which the benefit could be appurtenant, or substitute a negative easement, which presumably allowed a benefit in gross. However, common-law precedents cast doubt on the validity of negative easements for previously unrecognized purposes, and on the transferability of the easement benefit.
>
> The uncertainty and difficulties imposed by the common law of servitudes led to the widespread enactment of statutes. The Uniform Conservation Ease-

ment Act was promulgated in 1981. In 1999, only three states lacked such a statute. These statutes validate conservation and preservation servitudes without regard to common-law rules, but limit their coverage to servitudes held by governmental bodies and charitable organizations ... whose purposes include conservation or historic preservation. With the elimination of restrictions on creation and transferability of benefits in gross in this Restatement (§§ 2.6, 4.6), there is no longer any impediment to the creation of servitudes for conservation or preservation purposes....

[Thus,] [i]n modern servitudes law, landowners are free to grant conservation servitudes to ... governmental bodies and conservation organizations....

Restatement (Third) of Property, Servitudes § 1.6 (2000).

### E.

 Having determined the appropriate classifications for the County's open space easement, we next examine the rights of a servient owner at common law.

 Ordinarily, when a tract of land is subject to an easement, the servient owner may make any use of the land that does not unreasonably interfere with the use and enjoyment of the easement. James W. Ely, Jr. and Jon W. Bruce, *The Law of Easements and Licenses in Land*, § 8:17 (2005). The servient owner's right to reasonably use the land includes the right to grant additional easements in the same land to other persons. *Id.* If the first easement is not exclusive, subsequent

concurrent easements that are not unreasonably burdensome or inconsistent with the original easement are valid.[3] *Id.*

The rule that a servient owner retains the right to grant subsequent easements that do not unreasonably interfere with the rights of prior easement holders is universally accepted. *See* 28A C.J.S. *Easements* § 53 (2005) (landowner who grants easement in land may grant subsequent easements in the same land so long as subsequent easements are neither inconsistent with, or a burden upon, the prior easement); James W. Ely, Jr. and Jon W. Bruce, *The Law of Easements and Licenses in Land*, §§ 8:17, 8:31 (2005) (servient owner has right to grant additional easements in same strip of land, provided such action does not impair interests of first easement holder); Herbert T. Tiffany and Basil Jones, 3 *Real Property* § 756 (2004) (servient owner's right to reasonably use the land includes right to grant additional easements in the same land to other persons or entities); 25 Am. Jur. 2d. *Easements and Licenses in Real Property* § 98 (2004) (so long as they do not unreasonably interfere with the original easement or with each other, additional easements may be created in the same land, if the original easement is non-exclusive).

The Restatement (Third) of Property, Servitudes § 4.9 (2000) is in line with these authorities. It states: "[e]xcept as limited by the terms of the servitude ... the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude." *Id. See also* Restatement of Property, Servitudes § 486 (1944) (possessor of land subject to

---

**3.** The issue of whether a particular activity by the servient owner constitutes an unreasonable interference is a question of fact. *See* James W. Ely, Jr. and Jon W. Bruce, *The Law of Easements and Licenses in Land*, § 8:18 (2005) (*citing City of Los Angeles v. Howard*, 244 Cal.App.2d 538, 53 Cal.Rptr. 274 (1966); *Carson v. Elliott*, 111 Idaho 889, 728 P.2d 778 (Ct.App.1986); *McMahon v. Hines*, 298 Ill. App.3d 231, 232 Ill.Dec. 269, 697 N.E.2d 1199 (1998); *Preshlock v. Brenner*, 234 Va. 407, 362 S.E.2d 696 (Va.1987)).

easement created by conveyance is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating conveyance).[4] Comment e to Section 4.9 provides, "*e. Creation of additional servitudes.* Under the rule stated in this section, the holder of the servient estate *may create additional servitudes in land burdened by a servitude if the additional servitudes do not unreasonably interfere with the enjoyment of the prior servitude holders.*" Restatement (Third) of Property, Servitudes § 4.9 cmt. e (emphasis added).

 Moreover, in Pennsylvania, "the owner of land, who grants a right of way over it, conveys nothing but the right of passage and reserves all incidents of ownership not granted." *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 766 (3d Cir.1994) (quoting *Mercantile Library Co. v. Fidelity Trust Co.*, 235 Pa. 5, 15, 83 A. 592, 595 (1912)). Thus, the servient owner retains all rights in the property, subject only to the easement. *Rodier v. Twp. of Ridley*, 141 Pa.Cmwlth. 117, 595 A.2d 220 (1991). As a result, a servient owner may grant additional easements in the same strip of land, provided such action does not impair the interests of the first easement holder. *Assocs. of Phillipsburg v. Hurwitz*, 292 Pa.Super. 406, 437 A.2d 447 (1981).[5]

These general rules also apply where the servient tenement is burdened by a conservation easement. In their treatise *The Law of Easements and Licenses in Land,* authors James W. Ely, Jr. and Jon W. Bruce explain, "[t]he grantor of a conservation easement retains ownership of the servient land and *may use the property for any purpose not inconsistent with the servitude.* . . ." James W. Ely, Jr. and Jon W. Bruce, *The Law of Easements and Licenses in Land,* § 12:2 (2005) (emphasis added). Summarizing recent case law on this issue, the authors note:

> [A] [New York appellate court] court construed easement language to permit a grant by the servient owner of access over the restricted property on grounds such *de minimis* use did not interfere with conservation interests. Similarly, a Connecticut appellate court ruled that the terms of a conservation easement permitted construction of a second single-family home on the servient estate. . . . A Massachusetts appellate court has determined that the right of servient owners to 'pass and repass' across a marshland subject to a conservation restriction encompassed the right to make reasonable improvements. . . .

*Id.* (footnotes omitted).

 Thus, at common law, it is unnecessary for a servient owner to obtain a

---

**4.** We note the Supreme Court of Pennsylvania relied on Section 486 of the Restatement of Property, Servitudes § 486 (1944) in *Minard Run Oil Co. v. Pennzoil Co.*, 419 Pa. 334, 214 A.2d 234 (1965).

**5.** Numerous jurisdictions share this view. *See, e.g., Bosley v. Cabot Oil & Gas Corp.*, 624 F.Supp. 1174 (S.D.W.Va.1986); *City of Pasadena v. California–Michigan Land & Water Co.*, 17 Cal.2d 576, 110 P.2d 983 (Cal.1941); *Ashland Pipeline Co. v. Indiana Bell Tel. Co., Inc.*, 505 N.E.2d 483 (Ind.Ct.App.1987) *Butler v. Haley Greystone Corp.*, 352 Mass. 252, 224 N.E.2d 683 (Mass.1967); *Smith v. Edwards*, 249 Mich.App. 199, 645 N.W.2d 304 (2002); *Kiwala v. Biermann*, 555 S.W.2d 663 (Mo.Ct.

App.1977); *Nemaha Natural Res. Dist. v. Village of Adams*, 207 Neb. 827, 301 N.W.2d 346 (Neb.1981); *Cricklewood on the Bellamy Condo. Ass'n v. Cricklewood on the Bellamy Trust*, 147 N.H. 733, 805 A.2d 427 (N.H.2002); *Luevano v. Maestas*, 117 N.M. 580, 874 P.2d 788 (Ct.App.1994); *Coastal Plains Util., Inc. v. New Hanover County*, 166 N.C.App. 333, 601 S.E.2d 915 (2004); *Gray Drug Stores, Inc. v. Foto Fair Int'l, Inc.*, 32 Ohio App.2d 71, 288 N.E.2d 341 (1971); *Howorka v. Harbor Island Owners' Ass'n*, 292 S.C. 381, 356 S.E.2d 433 (Ct.App.1987); *Preshlock; Sanders v. Roselawn Mem'l Gardens*, 152 W.Va. 91, 159 S.E.2d 784 (1968).

prior easement holder's consent in order to grant additional easements over its property. To the contrary, the universally accepted rule is that a servient owner may grant additional easements provided those easements do not unreasonably interfere with the rights of prior easement holders.

Here, before the trial court, the County conceded the School District's proposed right-of-way would not violate its open space easement. *See* R.R. at 30a, 48–49a. Because the proposed right-of-way would not unreasonably interfere with the County's open space easement, grant of the right-of-way is permissible at common law without approval of the County.

### III.

■■■ Having determined that, at common law, the School District is not required to obtain County approval to acquire a right-of-way from a private landowner, we next consider whether such approval is required by statute. The trial court determined Section 11(a) of the Act requires the School District to obtain County approval to acquire the proposed right-of-way from the Lauvers.

Section 11(a) states, in its entirety:

*The ownership by the Commonwealth or a local government unit of an open space property interest shall not preclude the acquisition, by lease, purchase, or eminent domain, and use of rights of way or underground gas storage rights in such property by a public utility or other body entitled to exercise the power of eminent domain.* In the case of an acquisition from the Commonwealth by a body other than a public utility, such acquisition shall occur only if the State Planning Board, after public hearing with notice to the Department of Conservation and Natural Resources or the Department of Agriculture, as the case may be, shall approve such acquisition. *In the case of an acquisition from a local government unit by a body other than a public utility, such acquisition shall occur only if the governing body, after public hearing with notice to the public, shall approve such acquisition.* In the case of an acquisition from the Commonwealth or a local government unit by a public utility, such acquisition shall occur only if the Pennsylvania Public Utility Commission, after public hearing with notice to the Department of Conservation and Natural Resources, the Department of Agriculture or the local government unit, as the case may be, shall find that such acquisition and use are necessary or proper for the service, accommodation, convenience or safety of the public.

32 P.S. § 5011(a) (emphasis added).

The School District contends the trial court erred in interpreting Section 11(a) when it determined County approval is necessary for it to acquire a right-of-way from a private landowner. Because it does not seek to acquire any property or property interest from a local government unit, the School District argues, County approval is not required by statute. We agree.

The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly and, if possible, give effect to all of a statute's provisions so none are rendered mere surplusage. 1 Pa.C.S. § 1921(a). In construing the language of a statute, we must construe words and phrases according to rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a); *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127 (2003). When the words of a statute are clear and free from ambiguity, its letter is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.

C.S. § 1921(b); *Soberick v. Salisbury Twp. Civil Serv. Comm'n*, 874 A.2d 155 (Pa. Cmwlth.2005).

Although we must "listen attentively to what a statute says[;][o]ne must also listen attentively to what it does not say." *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 525, 788 A.2d 955, 962 (2001) (citation omitted). "[I]t is a canon of statutory construction that a court has no power to insert a word into a statute if the legislature has failed to supply it." *Vlasic Farms, Inc. v. Pennsylvania Labor Rels. Bd.*, 734 A.2d 487, 491 (Pa.Cmwlth.1999), *aff'd*, 565 Pa. 555, 777 A.2d 80 (2001). *See also Girgis v. Bd. of Physical Therapy*, 859 A.2d 852 (Pa. Cmwlth.2004) (we may not insert a word the legislature failed to supply into a statute).

The first sentence of Section 11(a) states, in relevant part, "the ownership by ... a local government unit of an open space property interest *shall not preclude* the acquisition ... and use of rights-of-way...." 32 P.S. § 5011(a) (emphasis added). Thus, pursuant to the plain language of the statute, ownership of an open space property interest, i.e., an open space easement,[6] does not, in and of itself, preclude the acquisition and use of a right-of-way by certain entities.[7]

Additionally, the third sentence of Section 11(a) states, as pertinent: "[i]n the case of an acquisition from a local government unit ... such acquisition shall occur

only if the governing body, after public hearing with notice to the public, shall approve such acquisition." 32 P.S. § 5011(a) (emphasis added). The plain language of this provision is significant for the description of the formalized process of approval from the granting governing body. The formalized approval, however, applies when one seeks to acquire a right-of-way "from a local government unit." *Id.*

Here, however, the School District is not seeking to acquire a right-of-way from a local government unit; rather, it is seeking to acquire a right-of-way from private landowners. The plain language of the third sentence of Section 11(a) does not require an entity to obtain the formalized approval of the governing body in order to acquire a right-of-way from a private landowner. Under these circumstances, the third sentence does not apply at all. In sum, County approval is not required under the clear language of the statute.

This plain language analysis harmonizes the Act with well-settled principles of common law. To that end, we are mindful of the rule of statutory construction that "[s]tatutes are never presumed to make any innovation in the rules and principles of the common law ... beyond what is expressly declared in their provisions...." *In re Holton's Estate*, 399 Pa. 241, 247, 159 A.2d 883, 886 (1960) (citations and quotations omitted). *See also Borough of Pitc-*

---

**6.** Section 2 of the Act defines an "open space property interest" as "[a]ny interest in real property acquired hereunder for the purpose of achieving open space benefits." 32 P.S. § 5002(3). The Act further defines "interest in real property" as "[a]ny right in real property ... including but not limited to a fee simple, *easement*, remainder, future interest, transferable development right (TDR), lease, license, restriction or covenant of any sort, option or contractual interest or right con-

cerning the use of or power to transfer property." 32 P.S. § 5002(2) (emphasis added).

**7.** Among the entities which may acquire and use a right-of-way despite the existence of an open space easement are those, such as school districts, which enjoy the power of eminent domain. *See* Section 703 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 7–703.

*airn v. Westwood,* 848 A.2d 158 (Pa. Cmwlth.2004).

Here, the Act contains no express declaration of the General Assembly's intent to alter the substantial body of common law that permits a servient owner to grant subsequent easements without the consent of prior easement holders. As a result, we must presume the Act does not implicitly effectuate such a change.

### IV.

In summary, the School District is not required either at common law or by statute to obtain County approval to acquire a right-of-of-way from a private landowner over land encumbered by the County's open space easement.

Based on the foregoing, we reverse.

### *O R D E R*

AND NOW, this 17th day of November, 2005, the order of the Court of Common Pleas of Lancaster County is **REVERSED,** thus granting summary judgment to the Ephrata Area School District.

KELLEY, Senior Judge, dissents and files opinion.

### DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

It is well settled that, in the case of an easement by express grant, the rights and liabilities of the parties are determined by the terms of the agreement and each has the right to insist that the terms of the

agreement are complied with so that, as long as the easement is enjoyed, it will remain substantially the same as it was at the time that the right accrued. *Minard Run Oil Company v. Pennzoil Company,* 419 Pa. 334, 214 A.2d 234 (1965) (quoting *Piro v. Shipley,* 211 Pa. 36, 60 A. 325 (1905)). When reviewing an express easement, the language of the agreement, unless ambiguous, controls. *Fedorko Properties, Inc. v. C.F. Zurn & Associates,* 720 A.2d 147 (Pa.Super.1998). Where the terms of an express easement are general, ambiguous, and not defined in reference to the circumstances known to the parties at the time of execution, the express easement is to be construed in favor of the grantee. *Lease v. Doll,* 485 Pa. 615, 403 A.2d 558 (1979).[1]

In the instant case, the Grant of Easement executed by the parties provides, in pertinent part:

> GRANTOR declares, makes know, and covenants for himself/herself, their heirs, successors and assigns, that the land described in the deed book and page mentioned above shall be restricted to agricultural and directly associated uses as hereafter defined....
>
> 1. Agricultural uses of land are defined, for the purposes of this instrument, as:
>
> > (a) The use of land for the production of plants and animals useful to man, including, but not limited to, forage, grain and field crops, pasturage, dairy and dairy products, poultry and poultry products, other live-

---

1. *See also* Restatement (Third) of Property, Servitudes § 4.1 cmt. d ("In interpreting expressly created servitudes, the expressed intention of the parties is of primary importance. Their intention is ascertained from the servitude's language interpreted in light of all the circumstances. Relevant circumstances include the location and character of the properties burdened and benefited by the servitude, the use made of the properties before and after creation of the servitude, the character of the surrounding area, the existence and contours of any general plan of development for the area, and the consideration paid for the servitude....").

stock and fowl and livestock and fowl products, including the breeding and grazing of any or all such animals, bees and apiary products, fruits and vegetables of all kinds, nursery, floral and greenhouse products, silviculture, aquaculture, and the primary processing and storage of the agricultural production of the Property and other similar and compatible uses.

2. Directly associated uses are defined as customary, supportive and agriculturally compatible uses of farm properties in Lancaster County, Pennsylvania and are limited to the following:

(a) The direct sale to the public of agricultural products produced principally on the farm;

(b) Any and all structures contributing to the production, primary processing, direct marketing and storage of agricultural products produced principally on the farm;

(c) Structures associated with the production of energy for use principally on the farm . . .;

(d) The provision of services or production and sale, by persons in residence, of incidental agricultural goods services, supplies and repairs and/or the conduct of traditional trades and the production and sale of home occupation goods, arts and crafts, so long as these uses remain incidental to the open space and character of the farm and are limited to occupying residential and/or principally agricultural structures of the Property;

(e) Structures and facilities associated with irrigation, farm pond impound-

ment and soil and water conservation;

(f) The accommodation of tourists and other visitors within principally residential and/or agricultural structures of the farm Property so long as this use is incidental to the agricultural and open space character of the Property;

(g) Religious uses including the conduct of religious ceremony on the Property and family cemeteries.

(h) Other similar uses may be considered upon written request to the Lancaster County Agricultural Preserve Board.

\* \* \*

4. All permitted non-agricultural structures shall, when feasible, be located in the immediate vicinity of existing structures, described as the homestead or curtilage, as reasonable expansions of the homestead or curtilage or on the area(s) of the Property of least productive capability. Such permitted structures shall, when feasible, utilize existing or common driveways, lanes or rights-of-way.

5. Institutional, industrial and commercial uses other than those associated uses described in restrictions 1 and 2 are prohibited.

\* \* \*

12. The GRANTEE, its successors and assigns, shall have the right to enforce these Restrictions by injunction and other appropriate proceedings. . . .

Reproduced Record at 10a–11a, 12a.

Thus, even if it is assumed that the provisions of what is commonly known as the Open Space Lands Act [2] do not apply

2. Act of January 19, 1968, P.L. (1967) 992, *as amended*, 32 P.S. §§ 5001—5013. Although I rely exclusively on the written provisions of the Grant of Easement, thereby rendering the application of the Open Space Lands Act unnecessary, I must comment on the Majority's

interpretation and application of its provisions.

In its opinion, the Majority reads Section 11(a) of the Act to apply only to acquisitions from a local government unit, implying that the acquisition of the right-of-way must be from the government. *See* Majority Opinion at 15–16. In this case, the School District acquired the right-of-way from the servient property owners, and requested that the County either relinquish its easement over the right-of-way or approve the acquisition by the School District. The Majority's reading of Section 11(a), therefore, would render County approval unnecessary because the right-of-way was not acquired "from a local government unit." I strongly disagree with this interpretation.

Section 11(a) states that ownership by a local government unit "of an open space property interest shall not preclude the acquisition, by lease, purchase, or eminent domain, and the use of rights of way or underground gas storage rights in such property ... by ... [a] body entitled to exercise the power of eminent domain." 32 P.S. § 5011(a). "Open space property interests" is defined in Section 2 of the Act as "[a]ny interest in real property acquired hereunder for the purpose of achieving open space benefits." 32 P.S. § 5002. Although the provisions of Section 11(a) seem to only require approval where the "acquisition" is "from a local government unit", I believe that the history of Section 11 mandates a contrary conclusion.

Prior to the 1996 amendment, Section 11 provided:

> The ownership by the Commonwealth or a county of an open space property interest shall not preclude the acquisition, by lease, purchase, or eminent domain, and use of rights of way or underground gas storage rights in such property by a public utility or other body entitled to exercise the power of eminent domain, *if in the case of acquisition by a body other than a public utility the State Planning Board, or, in the case of ownership by a county, the County Planning Commission, after notice to the Department of Forests and Waters or the Department of Agriculture as the case may be, after public hearing, shall approve such acquisition.* . . .

The pre–1996 language clearly illustrates that the State Planning Board was required to approve *all* acquisitions by a body other than a public utility except in the case of *ownership* by a County, in which case approval by

the County Planning Commission was required. It is equally clear from the pre–1996 language that "ownership by a County" did not refer to ownership of the servient estate, but rather the "ownership" of an open space property interest. Because most of the property subject to open space easements remains in private hands, the pre–1996 language required approval by either the State Planning Board or the County Planning Commission of any acquisition in the servient estate by a body entitled to exercise the power of eminent domain.

Prior to 1996, the Act allowed only the Commonwealth and the various counties to acquire open space property interests. The amendments to the Open Space Lands Act occasioned by Act 153 of 1996 expanded the original act to allow certain other local government units to acquire such interests. The bulk of the amendments contained in Act 153 relate to the addition of "local government units" and/or make necessary editorial changes to the Open Space Lands Act. The amendment to Section 11(a) was, I believe, intended to do nothing more than update that section. The current language of section 11(a) is ambiguous, as it leaves in doubt whether it was intended to apply only to the acquisition of servient estates owned by the government, or the acquisition of servient estates burdened by a government-owned open space easement. Accordingly, Section 1921 of the Statutory Construction Act, 1 Pa.C.S. § 1921, requires us to ascertain the legislative intent from, *inter alia*, the object to be obtained by the statute, the former law and the consequences of a particular interpretation. The object to be obtained by the law is the preservation of open space, which would not be aided by the Majority's interpretation allowing an open space easement to be avoided whenever a local government seeks to acquire other property interests in the servient estate. The former law, as explained above, was clear in that State or County approval was required regardless of who owned the servient estate.

Finally, the consequences of the Majority's interpretation would be that no approval is ever required where, as is most often the case, a private party retains ownership of the servient estate. Such an interpretation would allow wholesale destruction of the easement based on the whim of the acquiring local government, and runs counter to the espoused purpose of the Open Space Lands Act. *See* Section 1, 32 P.S. § 5001 ("[T]he Legislature finds that it is important to preserve open space and to meet needs for recreation,

in this case, and that the instant proposed access road to the school facilities is a use and a structure which are permitted under the express terms of the Grant of Easement[3], Section 2(h) of the Grant of Easement specifically provides that such "[o]ther similar uses may be considered *upon written request to the Lancaster County Agricultural Preserve Board ....*" *Id.* As a result, the permission of Lancaster County Agricultural Preserve Board was required in this case even if the proposed right-of-way and the access road structure do not violate the express terms of the Grant of Easement.[4]

Accordingly, unlike the Majority, I would affirm the trial court's order in this case.

amenity, and conservation of natural resources, including farm land, forests, and a pure and adequate water supply. The acquisition and resale of property interests authorized by this act are hereby declared to be for the public benefit, for the advancement of the public health, safety, morals and general welfare of the citizens of the Commonwealth, and for the promotion of sound land development by preserving suitable open space and concentrating more dense development in nearby areas.").

3. If such a use and structure are not permitted under the express terms of the Grant of Easement, *see* Section 5 ("Institutional, industrial and commercial uses other than those associated uses described in restrictions 1 and 2 are prohibited."), then Section 12 specifically empowers the Lancaster County Agricultural Preserve Board to "[e]nforce these Restrictions by injunction and other appropriate proceedings...."

4. *Cf. Redwood Construction Corp. v. Doornbosch*, 248 A.D.2d, 698, 699–700, 670 N.Y.S.2d 560, 561–562 (1998) ("[H]ere, the restrictive covenants set forth in West Branch's conservation easement do not expressly address or prohibit the proposed use of the access way at issue. Rather, the conservation easement expressly reserved to the grantors the right to 'sell, give away or otherwise convey the Protected Property or any portion or portions thereof, provided such conveyance is consistent with and subject to the terms of this Conservation Easement', and prohibited only those changes in use of the property as 'would be detrimental to any significant open space interest, significant natural habitat interest or other significant conservation interest sought to be protected by this Conservation Easement'. West Branch agreed not to unreasonably withhold its consent to a proposed change in use. Here, Redwood presented an unrebutted prima facie case that its de minimis proposed use of the Doornbosch property would not be inconsistent with West Branch's conservation easement. In any event, even assuming that the consent of West Branch was required for the conveyance of the Doornbosch easement, in light of the de minimis use sought, the court did not err in declaring, *inter alia*, that such consent was unreasonably withheld....").