# CHESHIRE,

## JULY TERM, A. D. 1844.

## HOWLAND, Assignee, *vs.* SPENCER.

Whether the payee of a negotiable note, which he has indorsed and transferred to another person, for collection for his own benefit, can not maintain a suit upon it in his own name, after a revocation of the authority to collect by a demand of the note, *quære?*

But the existence of such a note, would be good evidence to sustain an action of *indebitatus assumpsit*, by the payee, (or his assignee in bankruptcy,) for the recovery of the debt, on account of which the note was given.

A payee having indorsed a note in blank, and delivered the same to an attorney for collection, became bankrupt, and his assignee demanded the note, but it was not delivered to him. The assignee then commenced an action against the maker of the note. At the trial, it appeared that the defendant, after the commencement of the suit, paid the amount of the note to the attorney, who still retained possession of it, and the note was delivered to the defendant.—*Held*, that the payment was unauthorized, and no defence to an action by the assignee, unless by reason of a lien upon the note in the hands of the attorney.

The pendency of actions in which the attorney is summoned and sought to be charged as trustee of the payee, by reason of his being in possession of the unpaid note, constitutes no such lien, though the actions were commenced before the decree in bankruptcy.

Payment of the note to the attorney, after action brought, can not make him liable as trustee in such action.

A holder of a note or other chose in action, in trust, can not be charged as trustee of the owner of it, in a process of foreign attachment.

ASSUMPSIT, for money had and received to the use of the plaintiff, as assignee of Bellows & Peck.

The writ was dated March 14, 1843.

The plaintiff, in his specification, claimed to recover the amount of a note signed by the defendant, February 2, 1841, payable to Bellows & Peck, or order, for $146.07, on de-

mand, with interest annually ; on which was indorsed, March 27, 1841, $25.00.

Upon the trial, it appeared that the defendant executed the note as set forth in the specification, sometime prior to April 18, 1842. Bellows & Peck indorsed the note in blank, and delivered it to John May, of Westminster, Vermont, for collection ; and on that day, May instituted a suit on the note in his own name, but for the benefit of Bellows & Peck, which suit was afterwards withdrawn, and the note remained in the hands of May.

On the 10th of October, 1842, Otis Bardwell, of Walpole, commenced a suit against Bellows, in the county court for the county of Windham, in Vermont, and on the 12th of the same October, Levi H. Foster commenced a suit in the same court, against Bellows & Peck, in both of which suits May was summoned as trustee.

December 21, 1842, Bellows & Peck were declared bankrupts by a decree of the district court for the district of New-Hampshire, and the plaintiff was appointed assignee. In March, 1843, he demanded the note of May, but the latter refused to give it up.

The defendant offered in evidence the records of the suits in Vermont, containing the disclosure of May as trustee, filed May term, 1843, in which he stated that the note was indorsed to him, in trust, to collect for the benefit of Bellows & Peck ; that the horses of the defendant were attached upon the writ commenced on it, but were afterwards released by some arrangement had between the defendant and Bellows & Peck, and the suit withdrawn ; that he subsequently called on the defendant for payment, who thereupon exhibited evidence that he had made certain payments to Bellows & Peck, on the 26th of March and 18th of April, 1842 ; and that the note still remained in his hands in trust for them.

These two actions were continued, and are still pending in Windham county court.

On the first of April, 1844, a few days previous to the trial

in this case, this defendant paid the amount of the note to May, who delivered it up to him. May had previously been summoned to attend as a witness, and to bring the note with him.

A verdict was taken for the plaintiff, by consent, subject to the opinion of this court upon the foregoing case.

*Handerson,* for the defendant. It may be said that the pendency of the suits in Vermont, is not a bar to this action; and there would be authorities to sustain this objection, if the suits in Vermont had been against Spencer as the trustee of Bellows & Peck. The pendency of those suits might be pleaded in abatement, or the court might continue this action, until they were decided. 5 *Johns.* 101; 8 *Mass.* 456; 5 *N. H. Rep.* 566, *Burnham* vs. *Folsom.* But this note has never been in the possession of the payees since it was delivered to May, nor has it been under their control since the commencement of the trustee suits. They have not even had a legal right to the possession of it. It has always been beyond their control, by reason of the lien upon it, created by the trustee suits in favor of those creditors who attached it in the hands of May. It is true that in March, 1843, the plaintiff demanded the note of May, but he make no offer to indemnify him against the trustee suits. May was not obliged to give it up and take the risk of being charged for the amount, by judgment against him in those suits.

It is not necessary to show that those trustee suits will undoubtedly be sustained. May could not know whether they would or would not. They created a lien upon this note. Suppose the plaintiff, after demanding the note in March, 1843, had brought *trover* for it against May; it is very clear that the suit could not be sustained. 5 *N. H. Rep.* 225, *Robinson* vs. *Burleigh;* 7 *N. H. Rep.* 452, *Fletcher* vs. *Fletcher.*

Under certain circumstances, an action may be maintained upon a written contract, without producing the contract at

the trial. For instance, if it be lost or wrongfully withheld, by one having it in custody. But here it was neither lost nor wrongfully withheld. The plaintiff does not produce the note on trial ; the evidence shows that he has no right to the possession of it ; it is as entirely beyond his control as if it had never existed. The only count in his declaration is for money had and received, and the only evidence to support it, are the facts in regard to the note.

There is another view of this case. Spencer has paid the note to the man who had the legal and actual custody of it ; to the man authorized by Bellows & Peck to receive payment of it, and there is no evidence that notice was ever given to the defendant by any person, not to pay to May. He knew that May held the note indorsed to him, and was authorized to collect it. In March and April, 1842, he saw the note in May's possession, and certain indorsements of money before paid to Bellows & Peck, were made upon it. Having paid the note to the only person to whom he could pay it, and to the only person authorized to receive payment, and having taken it up, it seems to be a perfect defence to this action, independent of the grounds first suggested.

If the note was voluntarily and legitimately transferred to May, so as to give him the legal interest in the note, on what principle will *indebitatus assumpsit* lie against the original maker, in the name of the payee ? That it would lie in Vermont in favor of the indorsee, is settled by a decision in 13 *Verm.* 447, *Chase* vs. *Burnham*, even though he be only an indorsee for collection ; and such indorsee has the legal interest, and is trustee for the money recovered to the original payee. *S. C.* 452.

*F. Vose*, for the plaintiff. By the law of Vermont, a trustee is not chargeable for choses in action belonging to the defendant, found in the trustee's hands. *Rev. Stat. of Vermont, ch.* 29, § 29, 33, &c. ; 13 *Verm. R.* 133, *Hoyt* vs. *Swift, and cases therein cited, viz :* 9 *Ditto* 295, *Hutch-*

*ins* vs. *Hawley*; 8 *Ditto* 202, *Hitchcock* vs. *Edgerton*; 2 *Ditto* 280, *Sargent* vs. *Leland*.

PARKER, C. J. It appears from the case, that the note which furnishes the foundation of the present action, was payable to Bellows & Peck, or order, and although indorsed and delivered to May, so that he could institute a suit in his own name, the indorsement was merely in trust, that he might collect the note for their benefit. It is suggested, however, that this transferred the legal title in the note to May, so that Bellows & Peck could not, and of course the plaintiff, acting in their right, cannot maintain an action of *indebitatus assumpsit* for the recovery of the money. Whether the payee who had thus indorsed a note for collection, could maintain a suit upon it in his own name, after a mere revocation of the authority of the agent by a demand of the note, we need not decide. If he could not, it must be because the indorsement of the note still subsisted in the hands of the agent, by reason of which the agent might commence a suit upon it in his own name. There might, perhaps, be some technical difficulty in holding that a suit might be maintained on a negotiable instrument, by the payee in his own name, at the same time that one could be maintained by an indorsee; but this difficulty does not press us in this case. The debt was due to Bellows & Peck, although the evidence of it was placed in the hands of an agent, with authority to collect in his own name. The plaintiff having succeeded to the rights of Bellows & Peck, demanded the note, and thus revoked the authority of the agent; and if he may not thereupon maintain an action upon the note as assignee, on account of the indorsement, still, if the money is in fact due to him as assignee, there seems to be no objection to the maintenance by him of any other action suitable to his case, in which the technical difficulty does not arise. Such is this action of *indebitatus assumpsit*, in which the existence of a debt due upon a promissory note may be given

in evidence. The authority of the agent being revoked, if the money is due to the plaintiff, the fact that there is an indorsement in blank upon the note wrongfully withheld by the agent, will form of itself no objection to the maintenance of the action. We must see, of course, that the maker of the note is not liable to be prejudiced without his fault by the indorsement.

To the plaintiff's right to recover upon the merits, several objections have been raised.

The note is no longer in existence, having been paid by the defendant to May, the indorsee. If this had been before this suit, or without notice that the indorsement was in trust, the payment, having been made to one apparently the owner of the note, must undoubtedly have protected the defendant. But the case shews that the defendant had full knowledge that May was but an agent of Bellows & Peck. It appears from the evidence introduced by the defendant, that a suit commenced by May was withdrawn, and the attachment released, by an arrangement with Bellows & Peck. May subsequently called on the defendant for payment, who exhibited evidence that he had made payments to Bellows & Peck, and nothing farther was done. While matters remain in this state, Bellows & Peck become bankrupts, and the plaintiff, as assignee, commences this action against the defendant, who subsequently pays the amount of the note to May. There is nothing to show that he had any reason to suppose that there had been any transfer to May, by which he became entitled to receive the payment against the claim of Bellows & Peck, or their assignee, as shown by this action.

The defence, then, must rest upon the ground that May had the right to receive the payment, notwithstanding the plaintiff had demanded the note, and that the demand was not a revocation of his authority. This depends upon the effect of the trustee suits instituted against May, in the state of Vermont, and this is the main question in the case.

Those suits were commenced in October, 1843, prior to

the decree in bankruptcy, whether prior to the petition does not appear. If they bound the note in the hands of May, and constituted a lien upon the debt, so that May was liable by reason of it as trustee, then he had the right to receive the payment, notwithstanding the demand by the plaintiff and the institution of this suit, and the suit must fail. It must have failed without the payment. But if, on the other hand, the trustee suits constituted no lien upon the note, and May was entitled to be discharged as trustee, then this suit was well instituted, being for a debt due the plaintiff as assignee ; and the subsequent payment by the defendant to May cannot defeat the plaintiff's rights. If it was the intention of the parties to that payment to place the money in May's hands, so that the creditors in those suits might be placed in a better situation, and enabled to maintain these actions when they must otherwise have failed, it is clear that such an intention could not have availed ; and if all the parties acted with full notice, the case must be settled according to the legal rights of the parties upon the institution of this suit, and before the payment, whatever may have been the intention.

In relation to the suit of Bardwell, it might be sufficient to say, that he could have no lien upon the debt due to the partnership, his claim being against Bellows alone. But the writ of Foster was against Bellows & Peck, and the question still remains, whether a holder of a note or other chose in action, in trust, may be held as a trustee of the owner of it, in a process of foreign attachment. Upon this question, however, there seems to be no reasonable doubt. The authorities cited by the plaintiff's counsel seem to settle it conclusively. We do not perceive how May could have been charged as trustee when this suit was instituted; and of course he had no authority, the note having been demanded by the plaintiff, to receive payment afterwards. It was the folly of the defendant, (unless he has an indemnity,) while this suit was pending against him, to pay the money to May,

who was not then calling upon him for it. And if May may now be charged as trustee in Vermont because he has the money in his hands, that can not alter the rights of the plaintiff, whose action was previously commenced. Probably, however, such will not be the final issue there; but if it should be, we could not take notice of it.

*Judgment on the verdict.*