# United States Court of Appeals
## For the First Circuit

No. 14-1195

JOSEPH CASTAGNARO,

Plaintiff, Appellant,

v.

THE BANK OF NEW YORK MELLON,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr. U.S. District Judge]

Before

Howard, Lipez and Barron,
Circuit Judges.

Stephen T. Martin, with whom The Law Offices of Martin & Hipple, PLLC was on brief, for appellant.
Elizabeth T. Timkovich, with whom Phoebe N. Coddington and Winston & Strawn LLP were on brief, for appellee.
Stephanie A. Bray and New Hampshire Legal Assistance on brief, amicus curiae in support of appellant.

November 20, 2014

**HOWARD, Circuit Judge**.   This case presents the labyrinthine question of whether New Hampshire law requires a foreclosing entity to hold both mortgage and note before it can exercise a power of sale under N.H. Rev. Stat. Ann. ("RSA") § 479:25.   In turn, that issue splinters into two distinct inquiries: whether either the common law or state statute mandates the unity of the two and, if so, whether parties can override that baseline rule by agreement.   Because controlling state precedent does not provide definitive guidance on how to resolve these queries, and since consequential federalism interests are implicated, we will certify the questions to the New Hampshire Supreme Court.   N.H. Sup. Ct. R. 34.

## I.

In April 2007, Plaintiff-Appellant Joseph Castagnaro executed a promissory note in favor of Regency Mortgage Corporation ("Regency") and a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the lender and lender's successors and assigns.   From that point forward, the mortgage document (evidencing the security interest in the property) and the note (evidencing the underlying agreement to repay the loan on the property secured by the mortgage) traveled different routes.

On December 3, 2010, MERS assigned the mortgage to BAC Home Loan Servicing ("BAC").   Subsequently, it was assigned to

Defendant-Appellee Bank of New York Mellon ("BNYM"). BNYM is the current mortgagee.

Two versions of the note are found in the record. The first shows an undated indorsement from Regency to American Residential Mortgage. The phrase "certified true copy" has been excised in this version. The second version includes an undated assignment from Regency to American Residential Mortgage, and an undated indorsement to Countrywide Bank FSB. An allonge (in essence, an attachment) to this note reveals an undated assignment from Countrywide Bank FSB to Countrywide Home Loans, followed by an undated indorsement in blank.

After Castagnaro failed to make certain mortgage payments, BNYM moved to foreclose. Just days before the scheduled foreclosure sale, however, Castagnaro obtained an ex parte injunction in New Hampshire state court. Invoking diversity jurisdiction, BNYM removed the case.

Once in federal court, Castagnaro amended his complaint, which BNYM swiftly moved to dismiss. In January 2014, the district court allowed BNYM's motion. It concluded that the parties' intent to separate the mortgage and note at the onset of the transaction trumped any common law rule requiring unity. The court based this decision on analogous cases from the federal district court of New Hampshire, see, e.g., Galvin v. EMC Mortg. Corp., No. 12-cv-320-JL, 2013 WL 1386614 (D.N.H. Apr. 4, 2013)("Galvin I"), and a state

-3-

superior court decision, Dow v. Bank of N.Y. Mellon Trust Co., No. 218-2011-cv-1297, 2012 N.H. Super. LEXIS 52 (N.H. Super. Ct. Rockingham Cnty. Feb. 7, 2012). As mortgagee, BNYM could thus proceed with the foreclosure under RSA § 479:25, which authorizes "mortgagee[s]" to conduct non-judicial foreclosures where, as here, the mortgage document contains a clause allowing them.

Castagnaro timely appealed, and he requests that we certify the issues to the New Hampshire Supreme Court.

**II.**

We may certify a question to the New Hampshire Supreme Court when the issue of state law "may be determinative" of the case, and if "it appears [that] . . . there is no controlling precedent in the decisions of" the New Hampshire Supreme Court. N.H. Sup. Ct. R. 34. Though we are generally reluctant to do so when a party requests certification for the first time on appeal, see Boston Car Co., v. Acura Auto. Div., Am. Honda Motor Co., 971 F.2d 811, 817 n.3 (1st Cir. 1992), that delay alone does not tie our hands, see Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 n.4 (1st Cir. 2013) (referencing our sua sponte authority to certify questions of law).

Here, the relevant requirements are satisfied such that the New Hampshire Supreme Court is "better suited to address the issue[s]," Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 18 (1st Cir. 2012). Definitive answers to the certified

-4-

questions will either resolve the entire case or position us to wrap up this appeal. Yet, existing New Hampshire law does not forecast the answers to the questions as they have emerged in the context of the modern real-estate market. A brief discussion shows why.

**A.** **Must an entity foreclosing under RSA § 479:25 hold both the mortgage and note?**

Though BNYM held the mortgage when the foreclosure was initiated, it is unclear who held the underlying promissory note. Thus, the baseline issue in this case is whether, as a general rule, a party must possess both instruments in order to foreclose under RSA § 479:25. Two sources of law may affect the resolution of this question: the common law and New Hampshire's statutory regime. Neither, however, permits us as a federal court to answer the question with confidence.

The relevant case law dates back to the nineteenth and early twentieth centuries. These cases suggest that the mortgage and note are inseparable and thus a party would need both to foreclose. See Platts v. Auclair, 108 A. 167, 168 (N.H. 1919) ("This evidence was sufficient to sustain the plaintiff's burden of proof to establish his ownership of the note and mortgage."); see also Page v. Pierce, 26 N.H. 317, 322 (1853); Smith v. Moore, 11 N.H. 55, 62 (1840). Indeed, several New Hampshire superior court decisions have invoked the common law to hold just that. See, e.g., Deutsche Bank Nat'l Trust Co. v. Monchgesang, No. 09-C-00200,

2012 N.H. Super. LEXIS 56 (N.H. Super. Ct. Hillsborough Cnty. Mar. 27, 2012); Newitt v. Wells Fargo Bank N.A., No. 213-2011-cv-00173, 2011 N.H. Super. LEXIS 60 (N.H. Super. Ct. Chesire Cnty. July 14, 2011); Zecevic v. U.S. Bank, Nat'l Ass'n, No. 10-E-196, 2011 WL 7110237 (N.H. Super. Ct. Belknap Cnty. Jan. 20, 2011).

Yet, there exists another interpretation of the common law that may reconcile those cases with modern market practices. The early decisions emphasize the debt (rather than the note) as being tethered to the mortgage. See, e.g., Southerin v. Mendum, 5 N.H. 420, 430 (1831) ("Unless he [or she] at the same time transfers the debt, nothing will pass by his [or her] deed.") Though the note may serve as evidence of that debt, see Howland v. Spencer, 14 N.H. 580, 584 (1844), according to BNYM, it is the mortgagee's connection to the debt, rather than to the note, that permits the mortgagee to move forward with a foreclosure. BNYM goes on to argue that if a mortgagee retains legal title to the mortgage, while the note holder possesses an equitable interest in the mortgage, see, e.g., Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 291-92 (1st Cir. 2013)(stating that, under Massachusetts law, "[t]he noteholder possesses an equitable right to demand and obtain an assignment of the mortgage"), then the mortgage and debt are inexorably tied together (regardless of where the note may travel), and the mortgage alone should be sufficient to foreclose. This is true even if the mortgagee then has an

-6-

obligation to account to the note-holder. This perspective, BNYM proffers, is the one that best comports with a real-estate market in which instruments are routinely divided and sold off.

Even if the New Hampshire Supreme Court rejected that argument, it might view this question (as the Massachusetts Supreme Judicial Court did) as one governed by "principles of agency." See Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1129 n.20 (Mass. 2012). It could therefore hold that although a mortgagee must generally possess the note to foreclose under RSA § 479:25, it can also foreclose "as the agent of the note holder." Id. If the New Hampshire court were to follow that approach, it would also need to decide whether language in the mortgage document in this case naming MERS "nominee for lender and lender's successors and assigns" creates an agency relationship allowing foreclosure under RSA § 479:25. Id. at 1134 n.29 (noting that possibility but not resolving it). It would further need to resolve whether the use of the term "nominee" to describe that relationship imposes any burden on the mortgagee to show specific authorization from the note holder before foreclosing. Cf. Dwire v. Sullivan, 642 A.2d 1359, 1360 (N.H. 1994)("Unlike in a 'true trust,' the trustees of a nominee trust have no power, as such, to act in respect of the trust property but may only act at the direction of (in effect, as agents for) the beneficiaries." (internal quotation marks

-7-

omitted)).  We see nothing in existing New Hampshire precedent that provides a clear answer to these questions.

Even if the common law were clear a cogent argument can be made that, regardless of the common law, the statute governing non-judicial foreclosures independently requires an entity to hold both the mortgage and note.  RSA § 479:25.  Though the law itself does not explicitly address the rights or responsibilities of the note-holder, several provisions assume that the borrower will be paying the mortgagee; in other words, it presumes that the mortgagee and note-holder would be one in the same.  See, e.g., RSA §§ 479:7a, 479:10, 479:13, 479:18.  This could theoretically imply that the legislature intended to impose this requirement, and considered the proposition so obvious that it had no need to state it.

Of course, that argument is somewhat undercut by the statute's plain language.  Indeed, one could read the term "mortgagee" as referring solely to the holder of the mortgage.  See Galvin v. EMC Mortg. Corp., ___ F. Supp. 3d ___, 2014 WL 4823657 at *10 (D.N.H. Sept. 25, 2014)(examining the plain meaning of the word "mortgagee" at the time that § 479:25 was enacted)("Galvin II").  Equally problematic, neither party points us to authority that illuminates the legislature's intent.

On balance, we are left with cases that tend to suggest that the two instruments are inseparable, but which may not have

foreseen (or been responsive to) modern market practices.  We also have an arguably ambiguous statute without the benefit of associated, interpretive case law.  The New Hampshire Supreme Court has not expressed its views on either in the context of the contemporary marketplace, and, therefore, the most appropriate course of action is to seek its guidance.

B.        **Can the parties' intent override the unity rule and, if so, does separating the note and mortgage at the onset of the transaction indicate such an intent?**

If in fact possession of the note is generally required to foreclose under RSA § 479:25 -- either by statute, common law, or both -- we are still left with a perplexing issue that has divided courts within New Hampshire: whether the parties can contract around that rule.  Several New Hampshire state courts have said no.  See, e.g., Zecevic, 2011 WL 7110237.  These courts simply ask whether the mortgagee also possesses the note; the parties' intent is irrelevant.

Yet, at least one state superior court has diverged from the others.  In Dow v. Bank of New York Mellon Trust Co., the court, focusing extensively on the common law, held that even if ownership of the note is generally required to foreclose, the parties' intent can override that obligation.  2012 N.H. Super LEXIS. at *21-28.  Moreover, the litigants' decision to separate the two instruments at the beginning of the transaction manifested their desire to bypass that rule.  Id.  This interpretation, the

-9-

court reasoned, avoided the possibility that the mortgage was void ab initio. Id. at *9-10. Notably, decisions from the federal District of New Hampshire have consistently considered Dow to be the most persuasive state authority. See, e.g., Worrall v. Fed. Nat'l Mortg. Ass'n, No. 13-cv-330-JD, 2013 WL 6095119, at *4 (D.N.H. Nov. 20, 2013); Galvin I, 2013 WL 1386614 at *7-8.

Embedded here is an additional dispute about how best to determine the parties' intent. The Dow approach, finding the initial separation of the two instruments to be dispositive, is easy to administer. But, it is also not inevitable. The question of intent could also easily turn on further factual findings or involve an analysis of the plain terms of the mortgage agreement. See, e.g., Littlefield v. Acadia Ins. Co., 392 F.3d 1, 10 (1st Cir. 2004). For instance, it is conceivable that the parties separated the instruments at the beginning of the transaction solely to permit MERS to act as the recording agent for the lender, but with an expectation that the two instruments would be reunited at the time of any foreclosure. Cf. Bank of Am. v. Greenleaf, 96 A.3d 700 (Me. 2014)(finding MERS to only have the right to record a mortgage as nominee for the lender). Although the law may require us to sift through the parties' shared intent, no controlling authority from New Hampshire conveys how to properly do so in this situation.

Finally, even if we were able to answer those questions with respect to New Hampshire common law, the exercise could be

-10-

academic if the foreclosure statute (previously discussed) independently requires possession of both the mortgage and note. RSA § 479:25. That is, even if parties can circumvent the common law rule, it is unclear whether they could do the same with respect to the statute. On one hand, section 479 permits parties to waive certain aspects of the law or to alter them through explicit terms in the mortgage. See, e.g., RSA § 479:25(IV) (permitting waiver of notice prerequisites). This logic could theoretically apply to the putative requirement at issue here. Conversely, the fact that the legislature expressly provided for waivers or exceptions in certain circumstances, but may have failed to do so in this context, could signify that the rule is immutable. Without controlling case law on point, we simply cannot settle this question.

After considering the arguments from all angles, only one thing is clear: the law is not. Such uncertainty animates us to certify this case to the state Supreme Court.[1]

**III.**

In addition to satisfying the technical requirements of New Hampshire Supreme Court Rule 34, this case implicates

---

[1] If one must possess the mortgage and note, an additional issue is whether the note must be the "blue-ink" original. The district court had no reason to tackle that question and reasonably sidestepped it. For us, it only becomes relevant if remand to the district court is necessary. If that path is required, our review would benefit from the district court's consideration of the question in the first instance. See Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 49 nn.5-6 (1st Cir. 2009). Thus, we will neither resolve nor certify this question.

-11-

compelling federalism considerations which strongly militate towards certification. <u>See, e.g.</u>, <u>United States</u> v. <u>Howe</u>, 736 F.3d 1, 5 (1st Cir. 2013). Though we have recently had occasion to traverse the muddled world of MERS, this case, unlike our recent decisions, presents a question of first principles respecting how New Hampshire will address the ongoing foreclosure saga. It is one with significant implications for the state of New Hampshire, and thus should ultimately be decided by its Supreme Court. <u>See, e.g.</u>, <u>Bucci</u> v. <u>Lehman Bros. Bank FSB</u>, 68 A.3d 1069 (R.I. 2013); <u>Eaton</u>, 969 N.E.2d 1118.

**IV.**

Accordingly, we certify the following questions to the New Hampshire Supreme Court:

> 1) Does New Hampshire common law and/or RSA § 479:25 require a foreclosing entity to hold both the mortgage and note at the time of a nonjudicial foreclosure? If so, can an agency relationship between the note holder and the mortgage holder meet that requirement, and does language in the mortgage naming the mortgagee "nominee for lender and lender's successors and assigns" suffice on its own to show an adequate agency relationship?
>
> 2) Assuming that the common law and/or RSA § 479:25 requires a unity of the mortgage and note at the time of a nonjudicial foreclosure, and that an agency relationship between the note holder and the mortgage holder does not satisfy such a requirement, can the parties' intent to separate the two overcome the unity rule? If so, does separating the mortgage and note at the onset of the transaction indicate such intent as a matter of law?

We are cognizant that the New Hampshire Supreme Court currently may be considering similar issues in <u>Bergeron</u> v. <u>New York Community Bank</u>, (14-0185) (N.H. argued Oct. 15, 2014) (another reason why we should not be too quick to act).  We defer to that court on how it chooses to handle the logistics of resolving the overlapping questions.  We would also welcome any other comments on relevant points of state law that the New Hampshire Supreme Court should wish to share.

The clerk of this court is instructed to transmit to the New Hampshire Supreme Court, under the official seal of this court, a copy of the certified questions and our opinion in this case, along with copies of the parties' briefs, appendix, and supplemental filings under Rule 28(j) of the Federal Rules of Appellate Procedure.  We retain jurisdiction over this appeal.

So Ordered.